MAGGIE H. BARRINGTON

v.

DAN RIVER, INC.

April 29, 1983.

Record No. 811965.

Present: Carrico, C.J., Cochran, Poff, Compton, Stephenson, and Russell, JJ., and Harrison, Retired Justice.

*Stephen G. Bass (Carter, Craig & Bass,* on briefs), for appellant.

*James A. Harper, Jr. (Michael P. Regan; Gregory B. Robertson; Hunton & Williams,* on brief), for appellee.

PER CURIAM.

The background, facts, and controlling principles in this case are very similar to those in *Caskey v. Dan River,* 225 Va. 405, 302 S.E.2d 507 (1983) (this day decided). In each instance a claimant's application for compensation benefits was denied by a hearing commissioner and, on appeal, by the Industrial Commission of Virginia. The dispositive issue in both is whether the Commission erred in holding that the claimants failed to establish by a preponderance of the evidence that their disabilities were due to an occupational disease which was causally related to their employment by Dan River Mills.

Maggie H. Barrington, a 60-year-old woman, was employed in textile manufacturing plants for approximately thirty-six years. She worked for Dan River, her last employer, for eighteen years and until terminated on March 4, 1978. While so employed, she alleges that she was exposed to cotton trash dust, and as a result developed byssinosis and became disabled. The diagnosis of byssinosis was made by a physician on December 5, 1980, and on April 16, 1981, Barrington filed an application with the Commission, alleging her disability from an occupational disease and claiming workmen's compensation benefits. The company denied that Barrington suffered from any condition causally related to her employment by Dan River.

It is not disputed that Barrington suffers from severe chronic obstructive lung disease. This disease has many causes, including cotton dust, cigarette smoking, other types of work-exposure, pollutants, allergic illnesses, and infections. On December 5, 1980, claimant was examined by Dr. Herbert O. Seiker, Director of the Pulmonary Disease Service of the Department of Medicine at Duke University. Dr. Seiker's diagnosis was as follows:

It is my impression that she has severe chronic obstructive lung disease, which is totally disabling. In view of her history

of symptoms consistent with byssinosis and with the lack of any other etiologic factors to account for her lung disease, it is my impression that she has disability due to cotton dust exposure. . . .

In diagnosing Barrington's condition as "1. Chronic obstructive lung disease" and "2. Byssinosis", Dr. Seiker further observed that she was disabled for any type of work requiring strenuous or sustained exertion. It is his opinion that the byssinosis accounts for her obstructive lung disease.

Barrington was also examined by Dr. Thomas J. O'Neill, of Danville, a pulmonary disease specialist. This examination, made at the request of Dan River, was conducted on May 13, 1981. Dr. O'Neill agreed that Barrington suffered from chronic obstructive pulmonary disease and reported:

In my opinion, this patient's lung disease is multifactorial in origin. By history, this lady clearly has reactive lung disease and responds with increased symptomatology to various non-specific, as well as, specific pulmonary allergens, including: strong odors; various dyes; and carpet material. Mrs. Barrington has undoubtedly suffered some lung damage from cigarette smoke exposure on a nonpersonal basis from the split stream cigarette smoke of her husband. Further, there is a very strong history of recurrent pulmonary infections which would, in my opinion, account for the abnormal chest x-ray and the striking cough in this lady's history that strongly suggests to me an element of chronic bronchiectasis. . . .

The depositions of both specialists were taken in July 1981, and both adhered to the diagnoses they had made and given in their respective medical reports at the time of their earlier examinations of claimant.

Dr. Seiker testified that Barrington "has chronic obstructive lung disease whatever its cause, and then from the history it's determined that she has an environmental exposure that is identifiable as a peculiar illness, and it's been so identified because it occurs in a large number of people who work in the cotton mill environment, therefore, the diagnosis of byssinosis is made. She has byssinosis. Now the argument is whether she has byssinosis that has caused her lung disease or whether something else has caused her lung disease. . . . Your real problem is how much of

her lung disease and disability are due to this industrial exposure. Now that's — that's the judgment that has to be made."

Dr. O'Neill testified that Barrington had a history of recurring pneumonia in both lungs and had been hospitalized on five occasions between 1977 and 1981 for a condition which he referred to as "asthmatic bronchitis." He further noted six prior episodes of outpatient treatment of Barrington for upper respiratory tract infection. Dr. O'Neill regarded Dr. Seiker's diagnosis of byssinosis as debatable. In O'Neill's opinion the dominant factor which accounts for Barrington's condition is the recurrent infections she had had. He said that the claimant had suffered "an excessive number of infections," and that the claimant's "lung defense mechanisms" are grossly abnormal. He could not recall any patient who had come under his observation who "had such compromise defense mechanisms against infection." Dr. O'Neill concluded that it was extremely likely that claimant suffered from "bronchiectasis," a condition that is more than "simple bronchitis" and is one that causes a significant level of damage to the basic lung unit. O'Neill made reference to Barrington's exposure to her husband's cigarette smoking which he felt could have contributed to her obstructive airway disease. Dr. O'Neill further noted that Barrington had a very strong history "of what we call reactive lung disease." By this he meant that there were periods when the claimant had more narrowing of the airways than at other times and that this was attributable to her abnormal reaction or response to strong toxic vapors, such as carpet glue, clorox, or smoke.

The Commission observed that an employee "receives no presumption from having worked around cotton fiber or dust," and that Barrington had the burden of proof by a preponderance of the evidence. It noted that in cases of this nature it must rely heavily on the medical experts. It then analyzed the medical reports and testimony given by the two physicians. It commented that Dr. Seiker had stated that the claimant had byssinosis, based on the fact that her obstructive lung disease had been established by pulmonary function studies and that she has a tightness in her chest and coughing, with a long exposure to cotton fiber.

The Commission attached significance to the fact that in making his diagnosis Dr. Seiker did not have the complete history of Barrington's numerous illnesses, episodes of respiratory infections and hospital confinements which Dr. O'Neill considered when he

made his examination and diagnosis of the claimant's condition. It commented extensively on O'Neill's conclusions and the reasons he assigned for his unwillingness to make a diagnosis of byssinosis, or any diagnosis of Barrington's condition separate from the primary diagnosis of chronic obstructive pulmonary disease. O'Neill testified:

> In my opinion, this lady *does not* have a second diagnosis [byssinosis], separate from the first diagnosis [chronic obstructive pulmonary disease], of significance contributed to by her occupation. [Emphasis added.]

The Commission accepted the opinion of Dr. O'Neill and rejected that of Dr. Seiker, thereby resolving the conflict in the medical testimony. Specifically, it held that "the employee [had] not carried the burden of proof as to the cause of the employee's obstructive lung disease."

The finding of the Commission that Mrs. Barrington failed to establish by a preponderance of the evidence that she is disabled by an occupational disease is supported by credible evidence, and therefore is binding on this Court.

We have considered and find no merit in appellant's other assignments of error.

The judgment of the Commission will be

*Affirmed.*