126 So.2d 739 (1961)
Beatrice LOBNITZ, Petitioner,
v.
ORANGE MEMORIAL HOSPITAL and Florida Industrial Commission, Respondents.
Supreme Court of Florida.
February 8, 1961.
*740 Hornsby & Osborne, Orlando, for petitioner.
Berson, Barnes & Inman, Jack C. Inman, Orlando, Burnis T. Coleman and Paul E. Speh, Tallahassee, for respondents.
DREW, Justice.
Petitioner here, the claimant in this workmen's compensation case, was employed by Orange Memorial Hospital to wash instruments, hospital supplies and saline bottles. Approximately a year after entering upon said employment, she contracted a skin condition technically described by the attending physician as dermatitis venenata caused, according to the evidence, by exposure to strong detergents and soaps in her work. The condition becoming acute, the claimant, at the request of her employer, was examined by the employer's physician, a skin specialist, on September 22, 1958 and, in the course of the next five to six weeks received some twelve treatments. The inflammation apparently cleared up and on the 23rd day of October, 1958, she was discharged by Dr. Pincus as having been cured. In the meantime she had resigned her employment from the hospital. At the time of her discharge by the attending physician, such physician gave her some medicine with directions to use it three times per day and see what happened.[1] During the period September 22, 1958 through October 23, 1958 compensation was paid to the claimant.
The claimant did not return to the physician nor contact her former employer with relation to her condition from the time she was discharged by the doctor on October 23, 1958 until April 23, 1959 when she returned to the physician for further treatment. The physician treated the claimant on the 23rd of April and the 27th of April at which time he advised the carrier that the claimant had returned for treatment on April 23rd and 27th for an eruption which consisted of some redness in an area of one inch related to her previous dermatitis venenata but that he had discharged her and that such condition should clear up in another three weeks. She received compensation from the dates April 23rd through May 30th.
The question now for consideration is whether the full commission erred in reversing the deputy commissioner who awarded compensation for the six months period between the time she was discharged the first time and the time she returned to the physician. The deputy commissioner found that:
"* * * Even though the Claimant admitted having made no effort to seek work or report to the employer the dermatitis condition during this period, the mere fact that the rash was present during this period constitutes a factual situation which permits me to infer that she could not, and would not have been hired had she attempted to seek employment. Therefore, I find that she was physically disabled during this period as a result of her compensable injury."
The full commission in reversing the deputy commissioner found that there was no substantial, competent evidence before him to establish that the claimant was incapacitated from performing her work in the last occupation in which she was injuriously exposed to the hazards of her dermatitis condition during the questioned period of *741 six months. It, therefore, concluded that, because of the fact that the record failed to disclose substantial, competent evidence establishing this fact, the deputy commissioner erred in the award of compensation.
We conclude that the full commission was entirely correct in its conclusion that the evidence before the deputy commissioner did not attain the quality of being competent and substantial and that the judgment of the full commission was entirely correct. There is another reason, however, upon which it must be concluded that the order under review here is without error.
The record is undisputed that the condition from which the claimant was suffering was one which was not difficult to cure. When she was first treated by the physician, she was discharged after five or six weeks and given some medicine with the instructions to use it two or three times a day and keep the physician advised. When she returned to the physician after some six months, she was treated twice and the condition was immediately alleviated. We think it would be manifestly unjust and certainly not in accordance with either the letter or spirit of the compensation acts to place the liability of compensation on the former employer of claimant during this six months period when the employer had no opportunity whatever to reduce its liability by proper medical treatment. While it is, of course, the responsibility of the employer to provide medical care and attention for those receiving compensable injuries in industrial accidents and to pay such injured employees the compensation prescribed by law, there is a corresponding duty and responsibility on the part of the employee to take all reasonable steps to reduce the liability of his employer by prompt medical attention where that is indicated. In this instance it was the immediate responsibility of claimant, when she determined that the dermatitis condition was growing worse, to contact the employer's physician for immediate treatment. She is not permitted under the law to allow such a condition to go on for a period of more than six months without making any effort to secure treatment and then expect her employer to pay her compensation during that period.[2]
For the reasons we have last discussed as well as those assigned by the full commission, the judgment of the full commission was correct and certiorari is hereby denied.
HOBSON, Acting C.J., ROBERTS and THORNAL, JJ., and WILLIS, Circuit Judge, concur.
NOTES
[1] In her testimony the claimant testified in response to the question:

"Q. And why did you quit seeing him in October, Mrs. Lobnitz?" as follows: A. Because he told me * * * He said for me to take care of my hands now for a while and see what happened, and that is what I did, but they was not healed up, and he told me * * * he gave me some medicine I was supposed to put on three times a day.
"Q. And did you ever see Dr. Pincus after that time? A. No because I didn't know whether I should or not. I didn't know whether I was supposed to or not."
[2] "A workmen's compensation claimant is under a general obligation to adopt reasonable measures to minimize damages, and he has no privilege either by intent or imprudence to intensify or prolong his disability at his employer's expense." 99 C.J.S. Workmen's Compensation § 318 (1958). Also see 2 Larson's Workmen's Compensation Law, § 61 (1952).