## Richmond

LEONARDA E. BRECKENRIDGE

V.

MARVAL POULTRY COMPANY, INC. AND EMPLOYERS'
INSURANCE OF WAUSAU

Record No. 830107.

September 7, 1984.

Present: All the Justices.

*Julia H. Butler (Ashcraft & Gerel*, on brief), for appellant.
*Thomas G. Bell, Jr. (Timberlake, Smith, Thomas & Moses, P.C.,* on brief), for appellee.

RUSSELL, J., delivered the opinion of the Court.

In this workers' compensation appeal, we must determine whether the evidence supports the Industrial Commission's finding that a change of physicians by the claimant was unauthorized by the employer.

Leonarda Breckenridge, the claimant, sustained a compensable injury to her hand as a result of an industrial accident in June 1979. She was treated by a series of physicians, each of whom

referred her to the next: Dr. Kidwell, Dr. Hess, Dr. Bell, and Dr. McCue. Dr. Frank C. McCue, an orthopedic surgeon practicing in Charlottesville, specialized in the treatment of injuries to the hand, but he also treated the claimant for a knee injury sustained in an earlier industrial accident.

In March 1980, the claimant began to visit Dr. David K. Webster, an orthopedic surgeon practicing in Staunton, for treatment of the knee injury. The claimant lived two miles from Dr. Webster's office, but a visit to Dr. McCue's office required her to drive 60 miles, round trip. She did, however, make three annual visits to Dr. McCue, in 1980, 1981, and 1982, for follow-up treatment of her hand injury. She testified that she wished to avoid making the trip to Charlottesville more often than necessary because pain in her knee made driving difficult.

After Dr. Webster began treatment of the claimant in March 1980, he sent written reports and bills to Employers' Insurance of Wausau, the insurance carrier for Marval, the claimant's employer. Wausau's representative inquired of Dr. Webster as to reason for the bills. Dr. Webster submitted a further report to Wausau, which then paid him $85.00, covering five visits to his office by the claimant in March and April 1980. Dr. Webster continued to treat the claimant and submitted periodic reports and bills to the carrier. Wausau made no further payment and, in May 1982, when Dr. Webster's bills amounted to $680.00, advised him that his treatment was unauthorized and that his bills would not be paid.

The dispositive question is whether the claimant was authorized to seek Dr. Webster's care. Code § 65.1-88 provides that the employer shall select a panel of at least three qualified physicians from which the employee shall choose a physician to treat an industrial injury. In an emergency, or if the employer fails to tender such a panel, "or for other good reasons," the Industrial Commission may require the employer to pay the cost of another physician who has been "called to treat the injured employee. . . ." The employer never offered the claimant a panel of physicians, but all parties agree that the claimant's treatment by Dr. McCue and that of the physicians who preceded him was authorized.

The opinion of the Commission states:

The general rule followed by this Commission is that if the employer fails to offer the injured employee a panel of physicians, the employee is at liberty to select a physician of his own, however, once said selection is made the employee is not at liberty to change therefrom unless referred by said physician, confronted with an emergency, or given permission by the employer and/or its insurer or this Commission.

The claimant does not contend that another physician referred her to Dr. Webster, or that she had the permission of the insurer or the Commission to call upon him for treatment. The sole issue is whether she had the permission of Marval, her employer. Commissioner Joyner, after hearing the evidence, found that she did not obtain such permission. On review, the full Commission concurred with this finding.

The only evidence bearing upon this issue was the testimony of the claimant. At the hearing before Commissioner Joyner, she testified:

Q. All right, Mrs. Breckenridge, tell me how you came to see Dr. Webster?
A. Because I go to Marval and I say I cannot make it no more to see Dr. McCue every week because my knee is hurt and I want to transfer here . . . it's easier for me in Staunton.
Q. Why couldn't you see Dr. McCue?
A. Because my legs hurt and I cannot drive.
Q. Who was it you spoke to on that occasion?
A. Same as last time [unintelligible] in nurses office.
Q. And what did she say to you?
[Counsel for employer and insurer]:
Objection, that is hearsay.
*Commissioner Joyner:*
Objection is sustained.

While cross-examining the claimant, counsel for the employer and carrier asked no questions concerning the employer's permission, or lack of it, to change physicians. Later the Commissioner asked the claimant:

Q. All right. Now, did you talk with someone at Marval before you started seeing Dr. Webster?

A. Yes sir.

Q. Now, without going into what was said between you and anyone else, did anyone there authorize you to start treatment by Dr. Webster?

A. I talked to the nurse and I say . . .

Q. No, no. Now the question was, did anyone authorize you to go to Dr. Webster, please answer "yes" or "no".

A. Yes sir.

No witnesses were called by the employer or carrier to refute this testimony.

On recross-examination, counsel for the employer and carrier asked the claimant:

Q. But you are coming in here today and saying that somebody from Marval sent you to see Dr. Webster?

A. I report to Marval Office that I am seeing Dr. Webster.

Q. Okay. You reported to Marval that you were seeing Dr. Webster?

A. Yes, that's right.

[Counsel for employer and insurer]:

That's all.

Wausau argues that this answer conflicts with the claimant's testimony given in response to the Commissioner's question above. We do not agree. There are, by definition, two sides to any dialogue. The claimant testified to both her statement to the employer and to the employer's response. The cross-examination was limited to her statement to the employer. Her testimony as to the employer's response is crucial, and stands uncontradicted on the record.

We have held repeatedly that although a fact-finder must determine the weight and credibility of witnesses, it may not arbitrarily disregard uncontradicted evidence of unimpeached witnesses which is not inherently incredible and not inconsistent with the facts in the record, even though such witnesses are interested in the outcome of the case. *Cheatham* v. *Gregory*, 227 Va. 1, 4, 313 S.E.2d 368, 370 (1984); *Hodge* v. *American Family Life*, 213 Va. 30, 31, 189 S.E.2d 351, 353 (1972); *Epperson* v. *DeJarnette*, 164 Va. 482, 485-86, 180 S.E. 412, 413 (1935); *Barnes* v. *Hampton*, 149 Va. 740, 743-44, 141 S.E. 836, 837 (1928).

The Commission did not find the claimant's testimony to be inherently incredible or inconsistent with the other evidence. Indeed,

the Commission could hardly have made such a finding because the carrier's payment of Dr. Webster's bill, after it had a full opportunity to investigate, is circumstantial evidence that the carrier was then satisfied that the doctor's treatment was authorized. The carrier may be presumed to have acted in its own interest, and it was aware that it had no duty to pay for unauthorized medical treatment. This circumstance tended to corroborate, rather than refute, the claimant's testimony.

Although the findings of the Industrial Commission, if based on credible evidence, are conclusive and binding upon us, the Commission's findings of fact are not binding upon us when there is no credible evidence to support them. The question of the sufficiency of the evidence then becomes one of law. *VEPCO* v. *Kremposky*, 227 Va. 265, 315 S.E.2d 231 (1984); *Stocks* v. *Fauquier School Bd.*, 222 Va. 695, 698, 284 S.E.2d 588, 589 (1981); *Goodyear* v. *Watson*, 219 Va. 830, 833, 252 S.E.2d 310, 312 (1979).

We find from the record, as a matter of law, that the claimant had her employer's permission to incur the expense of treatment by Dr. Webster, which thus, under the Commission's rules, became compensable under Code § 65.1-88. Accordingly, we hold that the Commission's finding is unsupported by the evidence. The case will be reversed and remanded to the Commission with instructions to enter an award in accordance with the views expressed herein.

*Reversed and remanded.*

COMPTON, J., dissenting.