## CHESAPEAKE MASONRY CORPORATION AND NORTH RIVER INSURANCE COMPANY

### v.

### JUNIOR R. WIGGINGTON

Record No. 832029

Decided March 8, 1985, at Richmond

Present: All the Justices

Mary Louise Kramer (Ralph L. Whitt, Jr.; Sands, Anderson, Marks & Miller, on briefs), for appellants.
Stephen M. Smith (Joseph Smith, Ltd., on brief), for appellee.

THOMAS, J., delivered the opinion of the Court.

The issue in this workers' compensation appeal is whether the Industrial Commission erred in awarding compensation to a claimant even though the Commission found as a fact that the claimant unjustifiably refused reasonable and necessary medical treatment offered by the claimant's attending physician. In order to resolve this issue, the Court must focus upon Code § 65.1-88 which provides in pertinent part as follows:

> As long as necessary after an accident the employer shall furnish or cause to be furnished, free of charge to the injured employee, a physician chosen by the injured employee from a panel of at least three physicians selected by the employer. . . .The employee shall accept the attending physician, unless otherwise ordered by the Industrial Commission. . . .
>
> . . . .
> The unjustified refusal of the employee to accept such medical service. . . when provided by the employer shall bar the employee from further compensation until such refusal ceases and no compensation shall at any time be paid for the period of suspension unless, in the opinion of the Industrial Commission, the circumstances justified the refusal.

The central facts are as follows: On March 23, 1983, claimant, Junior R. Wiggington, while employed as a brickmason for Chesapeake Masonry Corporation (Chesapeake), was pushing a wheel-

barrow at the jobsite when he was struck by a truck. Claimant contended that he injured his back in the incident. The employer's carrier denied the claim, contending that Wiggington had hurt his back elsewhere. However, the Commission held that the employee sustained an accidental injury arising out of and in the course of his employment. This determination is not challenged on this appeal.

Chesapeake never offered claimant a panel of three physicians as called for in Code § 65.1-88. In oral argument before the Court, Chesapeake represented that it did not offer the panel because it denied Wiggington's claim. Wiggington was left to secure medical treatment on his own.

On March 24, 1983, the day after his injury, and also on March 28, 1983, Wiggington visited his family doctor who diagnosed a lumbosacral strain. He referred Wiggington to an orthopedic specialist, Dr. Nevins, who diagnosed a musculoligamentous back strain related to the March 23, 1983 accident. By mid-May 1983, Dr. Nevins had concluded that Wiggington might have a disc problem. Dr. Nevins suggested the possibility of hospitalization and surgery. Wiggington made clear that he did not want surgery and asked to be referred to a chiropractor. Dr. Nevins advised Wiggington that he neither condoned nor supported chiropractic treatment and refused to make the referral. On May 23, 1983, Dr. Nevins learned from Wiggington that sometime in May, Wiggington had placed himself in the care of a chiropractor, Dr. Pahnke. Dr. Nevins did not treat Wiggington after May 23, 1983.

In its opinion of November 16, 1983, the Commission made the following findings:

1. "[T]he employee was receiving reasonable and necessary medical care from Dr. Nevins and was not justified in refusing such care and changing to Dr. Pahnke."
2. "The claimant was receiving reasonable care from an orthopedic specialist in view of the nature of his injuries, and we find the care sought from Dr. Pahnke under such circumstances is unreasonable treatment."

Upon our review of the record, these findings are supported by credible evidence and are therefore binding on appeal. *Caskey* v. *Dan River*, 225 Va. 405, 411, 302 S.E.2d 507, 510 (1983). Thus,

for purposes of this appeal, Dr. Nevins was Wiggington's attending physician within the meaning of Code § 65.1-88, and Wiggington unjustifiably refused Dr. Nevins' services.

Chesapeake argues, in essence, that this case is "open and shut." According to Chesapeake, the Commission's findings left it no choice but to deny Wiggington compensation during the period he continued his unjustified refusal of services. Chesapeake points out that the pertinent portion of Code § 65.1-88 is written in the language of command and admits of no discretion where there has been the requisite threshold finding of unjustified refusal.

The Commission imposed only part of the sanctions called for by Code § 65.1-88: it ruled that Chesapeake was not responsible for the bills submitted by the chiropractor. At the same time, however, the Commission also ruled that Wiggington was entitled to compensation payments even during the period of his unjustified refusal to accept Dr. Nevins' treatments. The Commission's explanation for this ruling is that "because the employer had never offered the employee any medical treatment, . . . the provisions of Section 65.1-88 of the Virginia Code with respect to the suspension of compensation payments during the refusal of reasonable medical treatment being offered by the employer does not apply." The Commission did not explain why, under the same facts, one portion of Code § 65.1-88 applies and another does not. According to the Commission, then, only where the attending physician is chosen from the panel referred to in the statute will the non-compensation sanction apply.

Chesapeake argues that the Commission's ruling is contrary to Commission precedent, contrary to the intent of the statute, and likely to place an employer who denies a claim in a "catch-22" position. Chesapeake cites several Commission decisions which state that where an employer fails to provide the panel called for in the statute, the employee has the right to choose his or her own physician, and that physician will become the attending physician. *See Crickenberger* v. *Tacco, Inc.,* 57 O.I.C. 86 (1976); *Dooley* v. *McCormick Foods, Inc.,* 56 O.I.C. 97 (1975).

In *Breckenridge* v. *Marval Poultry,* 228 Va. 191, 319 S.E.2d 769 (1984), this Court endorsed the Commission's rule that where a panel is not provided, the claimant can choose his or her treating physician. The issue there was whether the claimant's change of physicians had been authorized by her employer. We said the change had been authorized. There, claimant had never

been offered a panel of doctors. However, she had been treated by a series of doctors, each of whom referred her to the next doctor except in the case of the last doctor who treated her, to whom she had not been referred. Despite the lack of a panel, all parties agreed that the original series of doctors was authorized. Because there was no referral to the last doctor, we said the question whether that doctor should be paid turned on the operation of the following Commission rule:

> [I]f the employer fails to offer the injured employee a panel of physicians, the employee is at liberty to select a physician of his own, however, once said selection is made the employee is not at liberty to change therefrom unless referred by said physician, confronted with an emergency, or given permission by the employer and/or its insurer or this Commission.

*Id.* at 194, 319 S.E.2d at 770-771. We found, on the evidence, as a matter of law, that the claimant had been given permission to change and, therefore, the last doctor to treat her could be compensated under Code § 65.1-88. In *Marval Poultry*, it is implicit that an attending physician, within the meaning of Code § 65.1-88, can be selected other than from the panel called for in the statute.

This ruling is one of common sense. Were we to read the statute in the manner suggested by Wiggington, an employer who denies a claim would still have to provide its employee a panel from which to choose a physician. The employer would thus be forced to take inconsistent positions.

Moreover, Chesapeake cites other Commission cases for the proposition that once an employee selects his own physician, an employer is estopped from offering a panel. *See Crickenberger* v. *Tacco, Inc.*, 57 O.I.C. 86 (1976); *Walls, Sr.* v. *Zayre Corp. #795*, 54 O.I.C. 385 (1972). These cases form the basis for Chesapeake's concern that the Commission's order places it in a "catch-22" position. As the Commission's order now stands, Chesapeake must pay compensation to Wiggington until Chesapeake offers him a panel. But Chesapeake complains that when it failed to offer a panel, Wiggington had the right to select his own physician, which Wiggington did. Once that selection was made, Chesapeake

says it was estopped from offering a panel. Under the Commission's rule, Chesapeake appears to be correct.

■ Further, the intent of the statute is to penalize employees who unjustifiably refuse reasonable and necessary medical treatment. The sanction can be avoided only where the refusal is justified. Here it was not. The provisions of Code § 65.1-88 are mandatory. The explanation relied on by the Commission to avoid the impact of the statute does not withstand scrutiny.

■ We hold that where, as here, the Commission has made a finding of unjustified refusal to accept medical treatment the sanctions called for in Code § 65.1-88 must be imposed. This is so whether the physician whose services were refused was selected from a three-physician panel or chosen by another appropriate method, so long as the physician became the attending physician within the meaning of the statute.

Here, the Commission concluded, on the basis of credible evidence, that Dr. Nevins was Wiggington's attending physician. When the Commission then found that Wiggington unjustifiably refused Dr. Nevins' services, Wiggington was entitled neither to compensation nor to the payment of medical expenses during the pendency of the refusal.

*Reversed and final judgment.*