### Richmond

RUSSELL W. DAVIS

v.

BROWN & WILLIAMSON TOBACCO CO., et al.

No. 0122-86-2

Decided September 16, 1986

COUNSEL

B. Mayes Marks, Jr. (John C. Shea; Marks, Stokes & Harrison, on brief), for appellant.

Nathaniel S. Newman (Thompson, Smithers, Newman & Wade, on brief), for appellee.

OPINION

**COLEMAN, J.** — The narrow issue presented in this appeal from the Industrial Commission's denial of an award of compensation for work incapacity is whether the claimant's cancellation of an appointment with his treating physician constituted a refusal of medical services under Code § 65.1-88. We hold that it did not and reverse.

Claimant suffered a back and groin injury at work on June 4, 1985. He immediately reported his injury at the nurses' station, but, because he felt that he would improve without treatment, he declined to see the company doctor. However, by June 17, 1985, claimant's back pain had become so unbearable that he sought out Dr. David Haines, an orthopedic specialist, for treatment. He immediately reported his visit with Dr. Haines to the employer. The employer declined to offer claimant a panel of physicians because it considered the injury not to be work related. Dr. Haines saw claimant on four occasions. After taking x-rays of claimant's lower back area, he prescribed medication and physical therapy. On August 5, 1985, claimant, feeling that he was not improving under Dr. Haines' care, went to another orthopedic specialist, Dr. John Ayres. He called Dr. Haines' office the same day to cancel an appointment which had been scheduled for August 8, but advised that he would reschedule the appointment. Claimant has not returned to Dr. Haines and has remained out of work since seeing Dr. Ayres.

On August 9, 1985, claimant filed an application for workers' compensation benefits with the Industrial Commission. Although the deputy commissioner awarded benefits to claimant, the full Commission reversed, finding that, while the injury had arisen out of and in the course of his employment, claimant had unjustifiably refused medical treatment in cancelling his appointment with Dr.

Haines.

■ The parties have no dispute with the Commission's findings that the injury was compensable and that once claimant began treatment under Dr. Haines, he became claimant's recognized treating physician within the meaning of Code § 65.1-88. An attending physician selected by an employee becomes the treating physician if the employer fails or refuses to provide a panel of physicians. *See Chesapeake Masonry Corp. v. Wiggington*, 229 Va. 227, 231, 327 S.E.2d 121, 123 (1985); *Breckenridge v. Marval Poultry Co.*, 228 Va. 191, 194, 319 S.E.2d 769, 770-71 (1984). In *Breckenridge*, the Court recognized and endorsed the Commission rule that:

[I]f the employer fails to offer the injured employee a panel of physicians, the employee is at liberty to select a physician of his own, however, once said selection is made the employee is not at liberty to change therefrom unless referred by said physician, confronted with an emergency, or given permission by the employer and/or its insurer or this Commission.

228 Va. at 194, 319 S.E.2d at 770-71.

■ The Commission found that "[s]ince the claimant cancelled his appointment with Dr. Haines and immediately placed himself under the care of Dr. Ayres without permission of the employer, carrier or Industrial Commission," he unjustifiably refused medical treatment. We disagree. The Commission's holding erroneously expands the notion of what constitutes "unjustified refusal" of medical treatment under Code § 65.1-88,[1] by equating unauthorized medical treatment with unjustified refusal of treatment.

---

[1] The statute reads, in pertinent part:

The unjustified refusal of the employee to accept such medical service or vocational rehabilitation training when provided by the employer shall bar the employee from further compensation until such refusal ceases and no compensation shall at any time be paid for the period of suspension unless, in the opinion of the Industrial Commission, the circumstances justified the refusal. In any such case the Industrial Commission may order a change in the medical or hospital service or vocational rehabilitation training.

If in any emergency or on account of the employer's failure to provide the medical care during the period herein specified, or for other good reasons, a physician other than provided by the employer is called to treat the injured employee, during said period, the reasonable cost of such service shall be paid by the employer if ordered so to do by the Industrial Commission.

The intent of that statute "is to penalize employees who unjustifiably refuse reasonable and necessary medical treatment," *Chesapeake Masonry*, 229 Va. at 232, 327 S.E.2d at 124, from their attending physician, whether selected from a panel or chosen independently by the employee. The duty of the employee, once he obtains an attending physician, is "to accept such necessary medical attention as the nature of the accident may require." *Stump v. Norfolk Shipbuilding & Dry Dock Corp.*, 187 Va. 932, 938, 48 S.E.2d 209, 212 (1948). If the employee refuses such medical services, and the refusal is without just cause, Code § 65.1-88 bars the employee from receiving compensation or medical benefits until the refusal is cured.

 It is not disputed that claimant changed physicians without permission of the employer or the Commission. An unauthorized change in physicians, however, is not necessarily equivalent to a refusal of medical services under Code §65.1-88.[2] In order to invoke the suspension of benefits provision of Code § 65.1-88, there must be evidence of a "refusal of the employee to accept . . . medical service . . . when provided by the employer."

The cases in which the Commission and the appellate courts of Virginia have made or upheld determinations that an employee was not entitled to compensation involve a clear refusal to undergo medical treatment or to participate in the plan of treatment recommended by the treating physician. In *Stump*, for example, the employee refused to return to his treating physician due to his notion that he could take care of himself. 187 Va. at 938, 48 S.E.2d at 202. In *Johnson v. Arlington Lambert*, 59 O.I.C. 159 (1980), and *Horn v. Centennial Contractors, Inc.*, 57 O.I.C. 171 (1976), the employees refused to accept the recommended treatment and have a myelogram performed to determine the extent of their back injuries. In *Chesapeake Masonry*, the employee ignored the suggestions of his attending physician that he undergo surgery, and instead, refused any further treatments by a medical doctor and placed himself in the care of a chiropractor in direct defiance of the treating physician's instructions. *Chesapeake Masonry*, upon which the Commission relied heavily for its holding in

---

[2] When there has been an unauthorized change in physicians, the question for the Commission is whether the employer should be held liable for the medical expense thereafter incurred. *See Breckenridge v. Marval Poultry Co.*, 228 Va. 191, 319 S.E.2d 764 (1984).

this case, is readily distinguishable on its facts. Wiggington clearly refused competent orthopedic care, and was clearly unjustified in his refusal. Furthermore, he did not demonstrate that he was seeking better care.

Claimant in the present case never refused treatment as did the employees in the aforementioned cases. To the contrary, he did everything Dr. Haines instructed him to do, which included taking medication and wearing a lumbar corset. On claimant's fourth visit to Dr. Haines on July 25, the doctor's notes reveal that claimant was still experiencing pain, "low back radiating to his buttocks and lateral aspects of both lower legs." The notes further indicate that Dr. Haines gave claimant "a note for ls support (lumbar corset)," and told him to come back in two weeks. Claimant testified at the hearing before the deputy commissioner that he cancelled his August 8 appointment with Dr. Haines because "Dr. Haines wasn't doing anything for me other than telling me to come back in two weeks." Dr. Ayres noted in his report of his August 5 examination of claimant that "[h]e (claimant) had been placed in a lumbar corset but continued to have considerable back discomfort."

In considering whether an employee has refused medical services, it is imperative that the Commission, and the Court, focus upon the purpose of the legislature in requiring the employer to furnish and obligating the employee to receive medical attention.

> The requirement has as its obvious dual purpose the placing of the cost of such medical attention upon the employer and *the restoring of the employee's health* so that he may return to useful employment as soon as possible. The furnishing and receiving of such medical attention inures [sic], therefore, to the benefit of the employee and . . . to the employer as well.

*Immer & Co. v. Brosnahan*, 207 Va. 720, 724, 152 S.E.2d 254, 257 (1967) (emphasis added).

The policy behind suspension of benefits during the period of a claimant's refusal of medical services is to compel the employee to take all reasonable steps to reduce the liability of the employer by seeking prompt medical attention where it is indicated. *See Lobnitz v. Orange Medical Hospital*, 126 So. 2d 739

(Fla. 1961). It is logical that an employer not be obligated to compensate an employee who refuses to accept reasonable treatment, resulting in an aggravation or impediment to the cure of his disability. *See* 1 A. Larson, *Workmen's Compensation Law* § 13.22(6). In most instances, simple refusal to go to the doctor's office for treatment, or a refusal to keep appointments may amount to a refusal of medical treatment. Here, however, the claimant's cancellation of his appointment, while continuing to follow the prescribed treatment, and his immediate action in seeking more aggressive medical treatment, involved no rejection of prescribed medical treatment. The cancellation of an appointment while seeking additional medical attention, even should it result in a change of physicians, does not, standing alone, constitute a refusal of medical treatment—unless the change is determined to be unjustified refusal. While an employee cannot refuse the medical services offered by a treating physician without forfeiting his compensation and medical benefits, it is contrary to the purpose of the Act to penalize an employee for seeking additional, more aggressive and perhaps better medical care to correct injuries received in an industrial injury.

Due to the absence of credible evidence that claimant refused to follow the course of treatment prescribed by Dr. Haines, or that he otherwise refused any medical service offered to him by his treating physician, we vacate the Commission's finding that the mere cancellation of the appointment and change of physician constituted a refusal of medical services. Under the facts presented, the claimant's seeking additional medical care while continuing with the course of treatment of the attending physician did not constitute a "refusal" under Code § 65.1-88. The attendant circumstances are not consistent with an intent to refuse services.

The Commission's finding that claimant's injury was compensable was not appealed and is therefore final, and those benefits cannot be suspended solely due to claimant's cancellation of his medical appointment. We do not here decide, as the question was not addressed by the Commission, whether at some point in time after the initial cancellation of the appointment that claimant did abandon the course of treatment prescribed by Dr. Haines, so as to constitute a refusal, and whether such refusal, if any, was justified. We reverse the holding that claimant's cancellation of an ap-

pointment with his treating physician constituted a refusal of medical treatment. We remand the case to the Commission to consider whether the claimant did, at any time subsequent to his cancellation of the appointment with Dr. Haines, refuse medical treatment and, if so, whether such refusal was justified.

*Reversed and remanded.*

Koontz, C. J., and Hodges, J., concurred.