## Norfolk

RONALD L. BIAFORE

v.

KITCHIN EQUIPMENT COMPANY OF VIRGINIA, INC.,

AND

VIRGINIA CONTRACTORS GROUP SELF-INSURED ASSOCIATION

No. 0877-93-1

Decided June 21, 1994

COUNSEL

John H. Klein (Rutter & Montagna, on brief), for appellant.

Roger L. Williams (Daniel E. Lynch; Williams, Butler & Pierce, on brief), for appellee.

OPINION

BENTON, J.—The commission suspended Ronald L. Biafore's compensation because he refused surgery that the commission found to be reasonable and necessary. Biafore contends on this appeal that the commission erred (1) in finding that he could not refuse surgery proposed by the employer's examining physician, and (2) in focusing upon whether the surgery was reasonable and necessary, instead of whether his refusal was unjustified. For the reasons that follow, we reverse the decision to suspend compensation and remand this case to the commission for reconsideration.

## I.

The evidence proved that Biafore injured his left knee on December 19, 1989, and received compensation pursuant to a memorandum of agreement. Shortly after his injury, Dr. Michael Romash performed arthroscopic surgery for a tear of the medial meniscus on Biafore's left knee. Following the surgery, Dr. Romash noted that Biafore began to experience flexion contracture and other difficulties. He referred Biafore to Dr. Larry Shall, an orthopaedic surgeon. Dr. Shall diagnosed Biafore's condition as "left knee infra-patellar contracture syndrome/reflex sympathetic dystrophy [RSD]." After a course of treatment Biafore's condition did not improve. In July 1990, Dr. Whipple examined Biafore at the request of the employer and confirmed signs of RSD.

Dr. Shall later diagnosed "infra patellar contracture/patella entrapment syndrome" and, after several months of unsuccessful treatments, surgically performed a fat pad excision on Biafore's knee and manipulated the knee. After therapy, Biafore obtained full flexion of the knee but remained unable to reach normal extension. Several months after the surgery, Dr. Shall observed that Biafore's knee was not improving and discussed the possibility of a sympathectomy with Biafore. Dr. Shall noted that aggressive surgery might be needed after the sympathectomy and referred Biafore to Dr. Noel Parent for consideration of a sympathectomy. He also informed Biafore that "the end stage procedure ultimately could be a fusion."

At Dr. Shall's referral, Dr. Rice saw Biafore in the summer of 1991 and recommended continued medication and sympathetic blocks. However, he reported that his experience with sympathectomy in similar cases had been disappointing.

In October 1991, the insurance carrier again referred Biafore to Dr. Whipple for evaluation and treatment recommendations. Dr. Whipple noted in his report that he doubted the diagnosis of RSD. He recommended extensive surgical release procedures on Biafore's left knee. After Dr. Whipple completed his evaluation, the rehabilitation consultant employed by the insurer contacted Biafore to discuss Dr. Whipple's recommendations and contacted Dr. Shall because Biafore "has still not selected a treatment option."

After reviewing Dr. Whipple's report, Dr. Shall stated that "anything short of [Dr. Whipple's proposal] will not help Mr. Biafore." He also cautioned, however, that following the surgery he performed in September 1990, Biafore had full motion in his knee which he lost "little by little." Dr. Shall noted that if the aggressive procedure that Dr. Whipple proposed fails, Biafore may still need knee arthrodesis. Dr. Shall reiterated his belief that Biafore had RSD, that the RSD "is extremely recalcitrant to treatment, and, in its form, will always compromise the results of any procedure." He recommended that Biafore's RSD "be treated more aggressively perhaps with a sympathectomy and attempts at releasing his knee again." Biafore testified that Dr. Shall gave him three options for his treatment and told him to decide which option he wanted.

Dr. Rice continued to treat Biafore for RSD and reported in November of 1991:

I think that he has stable RSD. I honestly do not know whether or not additional knee surgery is likely to help him. I would think that we should probably continue him on his current medical program of Pamelor and Procardia.

Following Dr. Whipple's report, Dr. Wardell examined Biafore at the request of Biafore's attorney. Dr. Wardell agreed that Biafore's knee required aggressive contracture release. However, consistent with Dr. Shall, he diagnosed RSD and believed that Biafore would eventually need knee fusion.

Dr. Bercowitz reported as follows:

I wish to report that Mr. Biafore has been extremely compliant in following through with medical treatment that I have recommended to him. He has received opinions and recommendations regarding further therapy for his knee from several sources, and I feel that he has been appropriately evaluating these recommendations, some of which conflict with each other. For the moment, we are practicing conservative therapy, having him undergo active range of motion with his left knee and maintaining him on anti-inflammatory and tricyclic medication for pain and spasm.

In addition, Dr. Bercowitz stated that RSD "of left leg decreases chances for successful surgical result of left knee at this time. I support Mr. Biafore's wish to explore all alternatives to surgery at this time."

Dr. Rice later stated:

I really have no strong opinion as to whether or not he should undergo additional orthopedic procedures. Given the fact that he has what appears to be a reflex sympathetic dystrophy, I would not expect anything done locally to his knee would improve his pain syndrome, although it could improve the range of motion of the knee itself. The risks and benefits of that are best left to orthopedists.

## II.

Upon this evidence, the deputy commissioner held that Biafore did not unjustifiably refuse medical treatment. The deputy commissioner found "a legitimate difference of opinion among the numerous doctors who have examined [Biafore], with one suggesting an eventual fusion, others suggesting a more limited release procedure, perhaps with an accompanying sympathectomy, and others questioning the potential effectiveness of any surgery in light of the presence of reflex sympathetic dystrophy." On review, however, the commission held "that the surgery is reasonable based on the opinions of three orthopaedic surgeons." Upon its consideration "of the medical opinions taken together, as well as [Biafore's] stated reasons for refusing the surgery," the commission found that the surgery was reasonable and necessary.

## III.

■ Code § 65.2-603(B) reads, in pertinent part, as follows:

The unjustified refusal of the employee to accept such medical service . . . when provided by the employer shall bar the employee from further compensation until such refusal ceases and no compensation shall at any time be paid for the period of suspension unless, in the opinion of the Commission, the circumstances justified the refusal. In any such case the Commission may order a change in the medical or hospital . . . services.

The statute does not apply to every refusal of medical treatment. *See Richmond Memorial Hosp. v. Allen*, 3 Va. App. 314, 318, 349 S.E.2d 419, 421 (1986) (employee not required to accept employer's gratuitous offer to provide treatment by another physician, not the treating physician, from the panel originally offered). "The intent of the statute 'is to penalize employees who unjustifiably refuse reasonable and necessary medical treatment' from their attending physician." *David v. Brown & Williamson Tobacco Co.*, 3 Va. App. 123, 127, 348 S.E.2d 420, 421 (1986). *See also Chesapeake Masonry Corp. v. Wiggington*, 229 Va. 227, 232, 327 S.E.2d 121, 124 (1985).

■ Code § 65.2-603 allows an employee to select from a panel of physicians offered by the employer, or in the absence of a forthcoming offer, to select a physician of the employee's choice.

*Breckenridge v. Marval Poultry Co.*, 228 Va. 191, 194, 319 S.E.2d 769, 770-71 (1984). Once a physician is selected, it is well settled that an employee who is referred for additional medical services by the treating physician must accept the medical service or forfeit compensation for as long as the refusal persists. *Id. See* Code § 65.2-603; *Wiggington*, 229 Va. at 231, 327 S.E.2d at 123. It is equally well settled that absent a referral from the authorized treating physician, the employee may generally not change treating physicians except by permission from the commission or the employer. *Shenandoah Prods., Inc. v. Whitlock*, 15 Va. App. 207, 210, 421 S.E.2d 483, 485 (1992).

> A long-held principle of the . . . Commission . . . is that medical management of the [employee] is to be directed by the treating physician, not by an employer's representative. "[N]either the employer nor its insurance carrier may limit the treating physician in the medical specialist, or treating facilities to which the [employee] may be referred for treatment."

*Jensen Press, Inc. v. Ale*, 1 Va. App. 153, 158, 336 S.E.2d 522, 525 (1985).

The evidence proved that Dr. Shall was Biafore's treating physician and that Dr. Shall referred Biafore for treatment to Drs. Rice, Mueller, and Bercowitz. The evidence also proved that Biafore saw Dr. Whipple at the employer's instigation. Because no physician authorized to treat Biafore referred Biafore to Dr. Whipple for treatment, Dr. Whipple was not an authorized treating physician. Although employer could have authorized Biafore's treatment by Dr. Whipple, the employer could not have required Biafore to accept the treatment merely because it authorized it. *Richmond Memorial Hosp.*, 3 Va. App. at 318, 349 S.E.2d at 421. Although Dr. Whipple recommended the more invasive surgical procedure, the commission did not find that Dr. Shall, the treating physician, recommended the procedure to Biafore and that Biafore refused Dr. Shall's recommendation. Because Dr. Whipple was not a treating physician, that finding was necessary in order to conclude that Biafore's refusal was unjustified.

■ The commission found instead that Biafore's refusal was unjustified because the "surgery [was] reasonable based on the opinions of three orthopaedic surgeons." The evidence in the rec-

ord suggests, however, that Biafore may have received contradictory opinions from the various physicians to whom he was referred for treatment. As this Court has stated, "[t]he question is not whether the recommended procedure was justified, but whether the [employee's] refusal to submit to it was justified. The matter of justification must be considered from the viewpoint of the patient and in light of the information which was available to him." *Holland v. Virginia Bridge & Structures, Inc.*, 10 Va. App. 660, 662, 394 S.E.2d 867, 868 (1990).

The record establishes that the commission applied incorrect principles in deciding this case. Moreover, although the evidence indicates that Dr. Shall agreed in part that Dr. Whipple's recommendation may have offered Biafore some relief, the record is ambiguous whether he recommended that procedure to Biafore and Biafore refused Dr. Shall's recommendation. The commission made no findings as to those essential facts. Accordingly, we reverse the commission's decision and remand this case to the commission for reconsideration consistent with the principles stated in this opinion.

*Reversed and remanded.*

Baker, J., and Bray, J., concurred.