COURT OF APPEALS OF VIRGINIA


Present:   Judges Annunziata, Bumgardner and Clements
Argued at Salem, Virginia


MULLICAN FLOORING AND
 BITUMINOUS FIRE & MARINE
 INSURANCE COMPANY

                                          MEMORANDUM OPINION[*] BY

v.      Record No. 2979-03-3             JUDGE JEAN HARRISON CLEMENTS
                                                     JULY 20, 2004

DAVID PHILLIP PARSONS


FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

> Lisa Frisina Clement (Ramesh Murthy; Penn, Stuart & Eskridge, on
> brief), for appellants.
>
> D. Allison Mullins (Lee & Phipps, P.C., on brief), for appellee.


Mullican Flooring and Bituminous Fire & Marine Insurance Company (collectively, employer) appeal a decision of the Workers' Compensation Commission (commission) permitting David Phillip Parsons (claimant) to change his treating physician and denying employer's application to suspend compensation for claimant's unjustified refusal of medical treatment. Employer contends the evidence was insufficient to support the commission's findings that (1) claimant was entitled to change treating physicians and (2) claimant did not unjustifiably refuse medical treatment. Finding no error, we affirm the commission's decision.

As the parties are fully conversant with the record in this case and because this memorandum opinion carries no precedential value, this opinion recites only those facts and incidents of the proceedings as are necessary to the parties' understanding of the disposition of this appeal.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

## I. BACKGROUND

The relevant facts in this case are not in dispute. On July 17, 2002, claimant sustained a compensable injury to his neck while working for employer. He was subsequently examined by Dr. Matthew Wood, who diagnosed a ruptured cervical disc and recommended surgery. A second opinion by Dr. Jim Brasfield was in agreement, and on September 17, 2002, Dr. Wood performed a "C6-7 posterior hemilaminotomy and discectomy" on claimant.

Claimant's injury-related problems continued, however. On November 13, 2002, claimant returned to Dr. Wood's office complaining of "bilateral arm pain." Dr. Wood ordered an MRI and a myelogram. On November 25, 2002, Dr. Wood noted that the myelogram showed a recurrent disc protrusion at C6. Dr. Wood recommended a "complete diskectomy by the anterior approach." Dr. Wood further noted that claimant requested a second opinion that would be arranged by claimant's "rehab nurse and insurer." Dr. Wood indicated that he was "happy to assist in getting this evaluation accomplished expeditiously," adding, "Hopefully, he can be seen relatively soon, and we will be happy to have him back after his second opinion evaluation."

On December 4, 2002, Jan Christensen, R.N., claimant's rehabilitation case manager, sent a note to Dr. Ken Smith, requesting that he evaluate claimant and provide a second opinion. Christensen noted that both claimant and employer's insurance carrier were in favor of obtaining a second opinion. Claimant testified that he saw Dr. Smith for a second opinion at the insurance carrier's request.

Dr. Smith examined claimant on January 20, 2003. He agreed that claimant needed an "anterior cervical discectomy and fusion at C6-7 with plating." In his report, Dr. Smith noted that he "would be available to offer this procedure to the patient or he may return to Dr. Wood for the procedure." No follow-up appointment was scheduled at that time.

Claimant returned to Dr. Wood's office on January 24, 2003. Regarding that visit, Dr. Wood noted as follows:

> I had a long talk with David . . . . David had requested a second opinion with Dr. Ken Smith and that was arranged for him by his rehab nurse for the insurance company. After seeing Dr. Smith, David tells me he is more comfortable with his care and would rather have his surgery done by Dr. Smith. The re[ha]b nurse has discussed this with me as well today and she tells me she will discuss a transfer with [h]is insurance carrier. I have the fullest confidence in Dr. Smith's surgical skills and am equally confident that, after appropriate postoperative convalescence rehab, David will be able to resume a normal lifestyle and his usual activities, perhaps with the exception of working overhead. I wish David the best and I hope he will do very well. I appreciate the opportunity to participate in his care - he's been a most pleasant and cooperative patient. Our thanks, as well, to Dr. Smith for his help.

Dr. Wood issued claimant a work-restriction slip excusing him from work "pending [his] return appt. with Dr. Ken Smith."

Claimant testified that, when he saw Dr. Wood on January 24, 2003, they discussed Dr. Smith's evaluation. Claimant stated that he told Dr. Wood that "Dr. Smith was a very nice man . . . and really explained things to [him] in details," at which point Dr. Wood asked claimant if he wanted to see Dr. Smith for treatment. Claimant further testified that Dr. Wood told him he would understand if claimant would rather see Dr. Smith. According to claimant, after discussing the fact that Dr. Smith was "twenty miles closer," he asked Dr. Wood for a referral to Dr. Smith and Dr. Wood said he had "no problem with it." Claimant also testified that he sought a referral because Dr. Wood did not explain things to him or spend much time with him and his medical condition had worsened under Dr. Wood's care. Claimant stated that he understood the work-restriction slip issued by Dr. Wood on January 24, 2003, referencing his "return appt. with Dr. Ken Smith" to be a "written referral" to Dr. Smith and that his rehabilitation case manager set up an appointment for him to have surgery with Dr. Smith based on that work-restriction slip.

On January 27, 2003, claimant filed with the commission an application to change his treating physician from Dr. Wood to Dr. Smith.

On February 11, 2003, Dr. Wood issued another work-restriction slip stating that, although surgery had been recommended and claimant had been made aware of Dr. Wood's availability to schedule that surgery, claimant did not wish to schedule surgery with Dr. Wood.

On March 5, 2003, employer filed with the commission an application for suspension of claimant's benefits, alleging claimant had unjustifiably refused prescribed medical treatment.

On April 9, 2003, D. Scott Steffey, a nurse practitioner in Dr. Smith's office, wrote in a "To Whom It May Concern" letter that claimant scheduled the recommended surgery with Dr. Smith, but, prior to the surgery, notified Dr. Smith that his insurance carrier would not authorize Dr. Smith "to perform the surgery, because Dr. Wood made the referral for a second opinion" only. Steffey further noted that claimant expressed "concerns about letting Dr. Wood repeat a surgical procedure" and that the efforts of Dr. Smith's office to resolve the problem were unsuccessful.

Claimant returned to Dr. Wood's office on May 2, 2003. Regarding that visit, Dr. Wood noted as follows:

> David was last seen in January. He was suffering from a recurrent C6 disc. At that time, he left our care, with the understanding that he and his rehab nurse had arranged for him to be cared for by Dr. Ken Smith. Apparently that did not happen because the insurance carrier would not approve the transfer. The patient states his benefits have since been terminated.
>
> This is all surprising to me, and I think this whole terrible evolution can be attributed to the patient's medical decisions being made for him by parties other than his physicians. . . .
>
> \*      \*      \*      \*      \*      \*      \*
>
> I strongly feel he should undergo a repeat thoracic and cervical myelogram. I've prescribed some medication. I'll be

happy to treat this gentleman if he has trust in me and wishes to see me.

At the time I saw him last, he and his rehab nurse had reportedly arranged that he be treated by Dr. Smith. I'll be happy to see him again at any time.

Responding to written questions posed by counsel, Dr. Wood indicated, on May 6, 2003, that he did not "refer Mr. Parsons to Dr. Ken Smith for continuing treatment," and indicated, on May 7, 2003, that he would not "defer Mr. Parson[']s treatment related to his July 17, 2002 injury to Dr. Ken Smith."

On May 12, 2003, the deputy commissioner conducted an evidentiary hearing on the parties' applications. By opinion dated June 18, 2003, the deputy commissioner denied claimant's request for a change in treating physicians and suspended claimant's benefits for his unjustified refusal of medical treatment.

By opinion dated October 31, 2003, a majority of the full commission reversed the deputy commissioner's decisions. Finding claimant was "entitled to change physicians from Dr. Wood to Dr. Smith" because Dr. Wood referred claimant "to Dr. Smith for further treatment including surgery," the commission granted claimant's request for a change of treating physicians. Further finding that claimant had not unjustifiably refused treatment from Dr. Wood, the commission denied employer's request for suspension of benefits.

This appeal followed.

## II. ANALYSIS

On appeal, employer contends solely that the commission erred in granting claimant's request for a change of treating physicians and denying employer's request for suspension of benefits because no credible evidence supports the commission's findings that (1) claimant was entitled to change his treating physician and (2) claimant did not unjustifiably refuse medical treatment. Employer conceded at oral argument in this appeal that his second claim regarding

- 5 -

claimant's refusal of medical treatment is moot if we determine there is credible evidence to support the commission's finding that Dr. Wood referred claimant to Dr. Smith.

"On appeal, we view the evidence in the light most favorable to the party prevailing below. If supported by credible evidence, the factual findings of the commission are binding on appeal." Tomes v. James City Fire, 39 Va. App. 424, 429-30, 573 S.E.2d 312, 315 (2002) (citation omitted); see also Code § 65.2-706(A). This is so "even though there is evidence in the record to support a contrary finding." Morris v. Badger Powhatan/Figgie Int'l, Inc., 3 Va. App. 276, 279, 348 S.E.2d 876, 877 (1986). "This rule applies when an expert's opinion contains internal conflicts." Greif Companies/Genesco, Inc. v. Hensley, 22 Va. App. 546, 552, 471 S.E.2d 803, 806 (1996). "In determining whether credible evidence exists, the appellate court does not retry the facts, reweigh the preponderance of the evidence, or make its own determination of the credibility of the witnesses." Wagner Enters., Inc. v. Brooks, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991). Indeed, "[m]atters of weight and preponderance of the evidence, and the resolution of conflicting inferences fairly deducible from the evidence, are within the prerogative of the commission and are conclusive and binding on the Court of Appeals." Kim v. Sportswear, 10 Va. App. 460, 465, 393 S.E.2d 418, 421 (1990) (citation omitted).

It is well settled that, "*absent a referral from the authorized treating physician*, the employee may generally not change treating physicians except by permission from the commission or the employer." Biafore v. Kitchin Equip. Co. of Virginia, 18 Va. App. 474, 479, 445 S.E.2d 496, 498 (1994) (emphasis added). In other words, a claimant may change treating physicians if the authorized treating physician transfers care of the claimant to another physician. See Breckenridge v. Marval Poultry Co., 228 Va. 191, 194, 319 S.E.2d 769, 770-71 (1984) ("[O]nce [the selection of a treating physician] is made[,] the employee is not at liberty to change

therefrom unless referred by said physician, confronted with an emergency, or given permission by the employer and/or its insurer or [the] Commission.").

Here, the commission found that Dr. Wood referred claimant's continuing care and treatment to Dr. Smith. We conclude that portions of the medical record, coupled with claimant's testimony, constitute credible evidence to support the commission's factual finding.

The medical record and claimant's testimony reflect that Dr. Wood initially referred claimant to Dr. Smith only for a second opinion. However, upon discussing Dr. Smith's evaluation with claimant on January 24, 2003, Dr. Wood learned that claimant preferred to be treated by Dr. Smith, due, among other reasons, to Dr. Smith's more convenient location. Dr. Wood told claimant he had "no problem with" Dr. Smith treating claimant. Dr. Wood expressed confidence in the care Dr. Smith would provide claimant and noted that claimant's rehabilitation case manager would inform employer of the referral. In anticipation of the expected "transfer" of claimant's treatment and care to Dr. Smith, Dr. Wood further noted: "I wish David the best and I hope he will do very well. I appreciate the opportunity to participate in his care - he's been a most pleasant and cooperative patient." Dr. Wood then gave claimant a work-restriction slip excusing him from work pending further treatment by Dr. Smith. When Dr. Wood saw claimant on May 2, 2003, he noted:

> David was last seen in January. . . . At that time, he left our care, with the understanding that he and his rehab nurse had arranged for him to be cared for by Dr. Ken Smith. Apparently that did not happen because the insurance carrier would not approve the transfer.

Expressing his surprise, Dr. Wood attributed claimant's "terrible" situation to the fact that claimant's "medical decisions [were] being made for him by parties other than his physicians."

The commission reasonably concluded from this evidence that Dr. Wood intended to and did, in fact, refer claimant to Dr. Smith for continuing care and treatment. Because there is

credible evidence in the record to support the commission's finding, the fact that there is also contrary evidence in the record from Dr. Wood that he did not refer claimant to Dr. Smith for continuing treatment "is of no consequence." Wagner Enters., Inc. v. Brooks, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991).

Having found that credible evidence supports the commission's factual finding that Dr. Wood referred claimant to Dr. Smith, we are bound by that finding on appeal. See Tomes, 39 Va. App. at 430, 573 S.E.2d at 315. We hold, therefore, that, claimant's authorized treating physician having transferred claimant's care and treatment to Dr. Smith, the commission did not err in finding claimant was entitled to change treating physicians from Dr. Wood to Dr. Smith.

Furthermore, as employer concedes, our determination that credible evidence supports the commission's finding that Dr. Wood referred claimant to Dr. Smith renders moot employer's claim that claimant unjustifiably refused medical treatment. Having been validly referred by Dr. Wood to Dr. Smith, claimant sought the recommended treatment from Dr. Smith, his new treating physician. However, that treatment was wrongly thwarted by employer, who was precluded from interfering in the transfer of claimant's care. See Jensen Press v. Ale, 1 Va. App. 153, 158, 336 S.E.2d 522, 525 (1985) (holding that the "[m]edical management of the claimant is to be directed by the treating physician, not by an employer's representative"). Having improperly prevented claimant from obtaining the recommended medical treatment from his treating physician, employer will not now be heard to complain that claimant unjustifiably refused that medical treatment. Accordingly, we hold that the commission did not err in denying employer's application to suspend compensation for claimant's unjustified refusal of medical treatment.

For these reasons, we affirm the commission's decision.

Affirmed.

- 8 -