COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Fitzpatrick, Judges Benton and Bumgardner
Argued at Richmond, Virginia


K & K REPAIRS AND CONSTRUCTION, INC. AND
  HARTFORD UNDERWRITERS INSURANCE COMPANY
                                                                OPINION BY
v.        Record No. 0084-05-3                    JUDGE JAMES W. BENTON, JR.
                                                                NOVEMBER 22, 2005
JACKIE ALLEN ENDICOTT


          FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

          Ramesh Murthy (Penn, Stuart & Eskridge, on brief), for appellants.

          D. Allison Mullins (Lee & Phipps, P.C., on brief), for appellee.


      The issue raised by this appeal is whether the Workers' Compensation Commission erred

in finding that Jackie A. Endicott was entitled to a change in his treating physician.  We affirm

the commission's decision.

                                                  I.

      The record in this case is extensive, but the facts are essentially undisputed.  The

evidence established that Jackie A. Endicott sustained compensable injuries to his neck, lower

back, right arm, and right shoulder on November 11, 1997, arising out of and during the course

of his employment with K & K Repairs and Construction, Inc.  The commission approved the

parties' Memorandum of Agreement and entered an award for temporary total benefits to be paid

weekly during Endicott's incapacity and for medical expenses as long as necessary.  Endicott

returned to work June 22, 1998, but moved to Florida in early 2000.  Endicott and K & K

Repairs have had a continuing dispute concerning a treating physician for Endicott following his

move to Florida.

In 2000, Endicott filed claims for benefits alleging, in part, that K & K Repairs had failed to provide him with panel of physicians in Florida and had failed to pay medical benefits. After an exchange of letters, Endicott received a panel of physicians on July 12, 2000 and selected a physician from the panel. However, the physician he selected was unwilling to accept workers' compensation patients. On August 25, 2000, K & K Repairs agreed to provide Endicott with another panel. The record indicates K & K Repairs had "difficult[y] finding physicians in Florida, willing to take on a Virginia workers' compensation patient."

Before Endicott received the next listing of panel physicians, he required medical treatment and sought it from Dr. Mark Rubino, a neurologist. K & K Repairs refused to authorize Endicott to treat with Dr. Rubino and ordered him to select from the panel previously offered. The following day, Endicott went to a hospital emergency room where he received treatment from Dr. Jeffrey M. Rosenfield. Dr. Rosenfield's report indicates that "Dr. Rubino was contacted as the patient's neurologist" and that Endicott was admitted to the hospital at Dr. Rubino's recommendation. Dr. Rubino treated Endicott in the hospital and, three days later, referred Endicott to Dr. Michael B. Lusk, a neurosurgeon. Dr. Lusk examined Endicott, recommended that he be discharged, and arranged to continue treatment with him as an outpatient.

Endicott received a second panel of physicians in October 2000. This panel included five doctors including Dr. Lusk and Dr. Mark Gerber. Endicott selected Dr. Lusk, from whom he had earlier received treatment. After Dr. Lusk demanded a $650 fee, K & K Repairs refused to honor Endicott's selection and promised to provide Endicott with "another physician on the panel from which he can choose." Eventually, the commission resolved the dispute between the parties concerning Endicott's treating physician. A deputy commissioner ordered the parties' attorneys to agree on a physician and to notify him of their agreement. Finding that the parties agreed that

Dr. Gerber would be Endicott's treating physician and that Dr. Lusk would be paid for his prior services, the deputy commissioner ordered that result. On a request for review by Endicott, the commission upheld the deputy commissioner's findings and decision.

Endicott submitted other claims that were denied by the deputy commissioner. One of those claims was for payment of fees for services rendered by Dr. Lusk after April 2000. In light of the commission's opinion, the deputy commissioner ruled that K & K Repairs was not responsible for treatment rendered by Dr. Lusk after that date because Dr. Lusk was not the authorized treating physician.

On June 6, 2003, Endicott filed this current claim for benefits, alleging that K & K Repairs failed to pay his medical bills. Endicott later amended his claim to include a request that Dr. Lusk be named as his treating physician based on a referral letter from Dr. Gerber, the authorized treating physician. In his letter, Dr. Gerber notes that he and Dr. Lusk are partners in the same medical practice group and that both are neurosurgeons. Dr. Gerber also notes in his letter that he has not treated Endicott but reports as follows:

> I have, however, reviewed the medical records of Dr. Mark Rubino and Dr. Michael Lusk regarding [Endicott's] care secondary to his work-related injury. Dr. Rubino is a neurologist, who would normally see a patient before I would, as I am a neurosurgeon. It is customary in our practice to have a neurologist evaluate the patient first and only refer surgery cases to the surgeon.

> However, after a brief review of Dr. Rubino's records, referral to Dr. Lusk, my partner, was appropriate, as I was not available. He did have a cervical injury with myelopathy necessitating decompression. He has had chronic pain as a consequence of his injury, as well as a seizure disorder which has been under the care of Dr. Rubino.

> Therefore, I do feel the treatment provided by Dr. Rubino and Dr. Lusk has been reasonable, necessary, and related to his work injury. I refer Mr. Endicott to Dr. Rubino and Dr. Lusk for continuing treatment of his work-related injury.

The letterhead on his stationery shows that Dr. Rubino is one of seven neurologists in that same medical practice group.

The deputy commissioner denied Endicott's request for a change in treating physicians. He ruled that the letter from Dr. Gerber was of no consequence because Dr. Gerber had never treated Endicott and had made the referral merely to accommodate Endicott. He reasoned that Dr. Gerber had no basis for referring Endicott for treatment that was causally related to Endicott's injury by accident because he had neither seen nor treated Endicott.

The commission reversed the deputy commissioner's ruling; the commission found that Dr. Gerber's referral to Dr. Lusk was reasonable because it was based on his uncontested medical opinion that Dr. Lusk, with whom he practices, was well-suited to treat Endicott. The commission noted that it routinely approves referrals within an attending physician's medical practice. The commission also found no legal or medical reason to disregard Dr. Gerber's opinion and found sufficient evidence to demonstrate that the referral was valid. The commission further found that Dr. Gerber's referral was based solely upon his medical opinion and not upon any agreement or lack of agreement among the parties. A commissioner dissented, stating his belief that the referral was based solely on Endicott's request and, thus, was not reasonable or necessary. He opined that Dr. Gerber could not legitimately refer Endicott because he never treated Endicott.

II.

The dispositive question is whether Dr. Gerber made a valid referral to Dr. Lusk. The rule is well settled that an employee may change a treating physician when referred by the authorized treating physician, when confronted with an emergency, or when given permission by the commission or the employer. Biafore v. Kitchin Equipment Co., 18 Va. App. 474, 478-79, 445 S.E.2d 496, 498 (1994); Shenandoah Products, Inc. v. Whitlock, 15 Va. App. 207, 210, 421

S.E.2d 483, 485 (1992).  The issue whether a treating physician has made a valid referral of his patient to another physician for treatment is a factual question.  Daniel Construction Co. v. Baker, 229 Va. 453, 456, 331 S.E.2d 396, 398 (1985) (holding that the commission's finding that "'Dr. Troup referred the claimant to Dr. Rezba' . . . is supported by evidence"); Jensen Press v. Ale, 1 Va. App. 153, 159, 336 S.E.2d 522, 525 (1985) (holding that credible evidence supported the commission's factual finding "that the treating physician referred claimant to the pain clinic").  By statute, the commission's award is conclusive and binding on this Court as to all questions of fact when those findings are based on credible evidence.  Code § 65.2-706; Fairfax County School Bd. v. Humphrey, 41 Va. App. 147, 150, 583 S.E.2d 65, 66 (2003).  Moreover, the existence of "contrary evidence . . . in the record is of no consequence if credible evidence supports the commission's finding."  Manassas Ice & Fuel Co. v. Farrar, 13 Va. App. 227, 229, 409 S.E.2d 824, 826 (1991).

Under our standard of review, when we consider an appeal from the commission's decision, we must view the evidence in the light most favorable to the party who prevailed before the commission.  Humphrey, 41 Va. App. at 150, 583 S.E.2d at 66.  The undisputed evidence established that Dr. Gerber, the designated treating physician, was a neurosurgeon in the same medical practice group as Dr. Lusk.  Moreover, both physicians were on the panel of physicians that K & K Repairs provided to Endicott.  Dr. Gerber's letter expressly "refer[red] . . . Endicott to Dr. Rubino and Dr. Lusk for continuing treatment of his work-related injury."  We recognize that the referral could be perceived as having been occasioned because Endicott or his attorney requested it.  No facts proved that to be the case, however, and the commission, the finder of fact, implicitly rejected the suggestion that it happened.

The commission found that "Dr. Gerber's opinion . . . is not based on the parties' agreement or the absence of an agreement, but on a medical opinion."  This finding is supported

- 5 -

by credible evidence. In his letter, Dr. Gerber indicated that he reviewed Endicott's records, and he opined that Dr. Lusk, his practice partner, was well-suited to treat Endicott's condition. Dr. Gerber also noted that he "was not available" to treat Endicott. Thus, credible evidence in the record supports the commission's finding that "Dr. Gerber shares a practice with Dr. Lusk and has opined that it is appropriate for [Endicott] to treat with Dr. Lusk, his partner."

Significantly, Dr. Gerber also indicated in his letter that Dr. Rubino, a neurologist in his medical practice group, would normally first see a patient under the custom of their group practice and then make an evaluation before referring a patient to either Dr. Gerber or Dr. Lusk. The commission evaluated these and the other circumstances of this case and found "no medical or legal reason to disregard Dr. Gerber's [uncontradicted] opinion." Indeed, the commission expressly accepted Dr. Gerber's opinion that "the treatment provided by Dr. Rubino and Dr. Lusk has been reasonable, necessary, and related to his work injury." Whether Dr. Lusk "should have been designated as the . . . treating physician was a matter within the discretion of the commission." Baker, 229 Va. at 457, 331 S.E.2d at 398.

We hold, therefore, that credible evidence in the record supports the commission's finding that Dr. Gerber made a valid referral to Dr. Lusk. Accordingly, we affirm the commission's decision.

Affirmed.