## Richmond

JOHN L. CASKEY, JR.

v.

DAN RIVER MILLS, INC.

April 29, 1983.

Record No. 820537.

Present: Carrico, C.J., Cochran, Poff, Compton, Stephenson, and Russell, JJ., and Harrison, Retired Justice.

*Edward A. Gendron, Jr. (Gendron & Kirby*, on briefs), for appellant.

*Gregory B. Robertson (Michael P. Regan; James A. Harper, Jr.; Michael H. Corley; Hunton & Williams*, on brief), for appellee.

HARRISON, R.J., delivered the opinion of the Court.

John L. Caskey, Jr., contends that the Industrial Commission of Virginia erred in holding that he failed to establish by a preponderance of the evidence that the disability he suffers is from an occupational disease which is causally related to his employment by Dan River Mills, Inc.

On May 4, 1981, Caskey filed an application with the Commission, alleging that he suffered from byssinosis, an occupational disease, and had been totally disabled since August 1977. Claimant retired in July 1976, after approximately twenty years employment by Dan River, allegedly because of a disagreement with a work supervisor. Caskey had previously worked with other textile companies from 1935 until 1956. During this period claimant had worked as a doffer, a fixer or repairman, and as a maintenance worker in the mills. At times he was exposed, in varying degrees, to cotton dust and lint.

Claimant alleges that as a result of this employment and exposure he developed "classic" symptoms of byssinosis, such as Monday morning syndrome,* persistent cough, phlegm production, and shortness of breath which was intermittent in its earlier years and later became constant and severe.

Caskey is 69 years old and has a history of being a heavy cigarette smoker beginning at the age of eight or nine and continuing uninterruptedly throughout his adult life. The testimony and exhibits show that Caskey has received treatment over a period of years for various ailments, including alcoholism, peripheral neuritis and dizziness, chronic bronchitis, chronic laryngitis, obesity, emphysema, and hypertension. On June 14, 1980, Caskey suffered a stroke, apparently unrelated to his respiratory problems, which resulted in a partial paralysis of a significant portion of the right side of his body, including some impairment of his right lung.

Medical evidence was given by Dr. Herbert O. Seiker, director of the Pulmonary Disease Service at the Department of Medicine at Duke University, on behalf of the claimant, and by Dr. Thomas J. O'Neill of Danville, Virginia, on behalf of the employer. Both physicians qualified as pulmonary specialists.

On March 19, 1980, some four years after Caskey's retirement from Dan River, he consulted Dr. Seiker and was examined by him. The claimant and his wife provided the physician with claimant's history. Laboratory tests were conducted, chest x-rays taken, and pulmonary stress tests given Caskey on that day. Dr. Seiker gave a diagnosis of "chronic obstructive lung disease — byssinosis," and recorded his impressions of the claimant as follows:

> The patient has impaired pulmonary function and by stress testing, should not be expected to perform work more strenuous than sweeping floors. He also has a history of exacerbation of symptoms with exposure to cotton dust, which is typi-

---

* '[C]lassic history' of byssinosis, that of textile workers, is that after having worked for several years, the worker begins to notice symptoms on Monday morning, after being back at work for a short period of time, symptoms of chest tightness, shortness of breath, sometimes coughing, wheezing and sputum production, the symptoms usually being improved on Tuesday and the rest of the week, but after a number of years the symptoms become more persistent throughout the rest of the week, until finally the symptoms are more or less chronic. This history is part of the diagnosing of byssinosis.

*Walston v. Burlington Industries*, 304 N.C. 670, 672-73, 285 S.E.2d 822, 824 (1982).

cal for the diagnosis of byssinosis. He is overweight and has been a cigarette smoker both of which contribute to impaired function of his lungs. It is my impression that he is 50% disabled for work because of cotton dust lung disease and he is 100% disabled for working in the cotton dust environment.

On July 23, 1981, at the request of Dan River, Caskey was examined by Dr. Thomas J. O'Neill. Dr. O'Neill had available at that time claimant's prior medical records, a history provided by the claimant and his wife, laboratory tests, blood tests, and x-rays. Following his examination of claimant and a review of the medical records and tests, Dr. O'Neill concluded that although the claimant was disabled as the result of his stroke, he was not in fact suffering from byssinosis. In O'Neill's opinion, Caskey had "moderate-moderately severe chronic obstructive pulmonary disease that is multifactorial in origin." It was O'Neill's judgment that the dominant cause of claimant's respiratory impairment was cigarette smoking and that his pulmonary function was further impaired by his being overweight and by the intercostal and diaphragmatic muscle impairment secondary to the cerebrovascular accident in June of 1980.

Dr. O'Neill testified that during the course of his examination he requested a blood test on Caskey's immunoglobulins. He described this as a specific test felt to be of significance by many experts in textile industry related diseases. He said that the serum IgG level reflected by the test was of marked significance in deciding whether or not the case "is what they would term byssinosis," and that in clear-cut cases of byssinosis the level is usually significantly elevated. Dr. O'Neill testified that an IgG level of over 1800 would be highly corroborative of a diagnosis of byssinosis and that claimant's "IgG level was 955 units with a normal [level] of 800 to 1800, with a mean of 1250," and was "well within normal limits."

The physicians agreed that byssinosis does not show up on X-rays and that there is no objective evidence of the disease. Byssinosis is not an ordinary disease of life and while anyone is susceptible, exposure to cotton dust in one of the fiber industries is necessary to contract the disease.

The thrust of Caskey's argument is that Dr. Seiker testified positively and unequivocally that 50% of claimant's disability resulted from his having contracted byssinosis. He says that in denying his claim the Commission has improperly substituted its medical opinion for that of claimant's medical expert. Although claimant concedes that Dr. O'Neill testified that his condition was multifactorial in origin and that its dominant cause was cigarette smoking, he finds comfort in O'Neill's statement that he was not prepared to say categorically that claimant's cotton dust exposure played no part in his illness.

Dan River responds that there is a clear conflict in the medical evidence given by the two physicians. It relies on the testimony of Dr. O'Neill that claimant suffered from chronic obstructive pulmonary disease primarily attributable to excessive cigarette smoking. It argues that while Dr. O'Neill was understandably unwilling to make a categorical statement that claimant's cotton dust exposure played no part in his physical condition, it was clearly Dr. O'Neill's conclusion and testimony that Caskey did not have byssinosis.

Dr. O'Neill testified that Caskey "has the physical symptoms and findings of many things, one . . . [being] chronic obstructive pulmonary disease, [of which byssinosis is a sub category]." He said that a patient could have the symptoms of byssinosis and the exact same symptoms could also indicate other diseases. He testified that he, and a majority of other pulmonary doctors, at this time withheld preliminary diagnosis of byssinosis unless two factors are present:

First, that there is no other dominant feature in the history to attribute the dominant cause of the patient's pulmonary disease to. Second, that if you have another aspect of the history which is dominant, I don't diagnose byssinosis. Secondly, I do diagnose byssinosis if a patient has shown decremental falloff in function over a period of years. Particularly the classic pre and post employment changes upon entering and leaving the mill. So, in this man, Mr. Caskey, I withheld the diagnosis of primary byssinosis because (a) of the smok-

ing history and (b) the lack of documented falloff in pulmonary function pre and post employment.

In its opinion denying claimant's claim, the Commission noted the following observations made in February 1980 by claimant's family physician at the time he examined Caskey for complaints of shortness of breath:

Short of breath with chronic bronchitis for several years. Uses a Primetine Mist about twice a day. Would rather have a bronchometer. Chest sounds clear with diminished breath sounds and a few ronchi . . . He has an appointment in Durham soon to be investigated to see if he qualifies as a brown lung victim.

Caskey concedes that his symptoms could have been caused by either cigarette smoking or cotton dust and that the question to be resolved is which did cause his respiratory problems. He argues that since he suffers from a disease which has two possible causes, one compensable and one non-compensable, he is still entitled to compensation, alleging that it is not necessary for compensation entitlement that work exposure be the sole cause of a disease.

In the instant case, the claimant cannot recover unless he can establish by a preponderance of the evidence that (a) he is disabled, and (b) that his disability was caused by an occupational disease or that the occupational disease in some part contributed to the disability. *Smith* v. *Fieldcrest Mills*, 224 Va. 24, 294 S.E.2d 805 (1982). An occupational disease means a disease arising out of and in the course of the employment. No ordinary disease of life, with certain exceptions, to which the general public is exposed outside of the employment is compensable. Code § 65.1-46. The disability of the claimant is not disputed. Both doctors testified that Caskey is disabled, and the Commission so found. However, the Commission further determined that Caskey failed to prove that he has byssinosis, an occupational disease, and therefore he failed to prove the threshold requirement for any entitlement to compensation.

It appears from the record that in addition to his disabling stroke the claimant has suffered from several ordinary diseases of life. Both medical experts described claimant's condition as chronic obstructive pulmonary disease. One says the claimant has byssinosis which he attributes to his exposure to cotton dust. The other attributes claimant's condition to excessive cigarette smoking, obesity, and intercostal and diaphragmatic muscle impairment, secondary to the stroke which he suffered in June 1980.

The Commission evaluated the conflicting diagnoses of the two expert witnesses, resolved the conflicts, and determined that claimant had not established by a preponderance of the evidence that he suffered from an occupational disease. Findings of fact made by the Commission are conclusive on appeal when supported by credible evidence. Code § 65.1-98. *A&P* v. *Robertson,* 218 Va. 1051, 243 S.E.2d 234 (1978). We do not retry the facts before the Commission nor do we review the weight, preponderance of the evidence, or the credibility of witnesses. If there is evidence or reasonable inference that can be drawn from the evidence to support the Commission's findings, they will not be disturbed by this Court on appeal, even though there is evidence in the record to support contrary findings of fact. *Eccon Company* v. *Lucas,* 221 Va. 786, 273 S.E.2d 797 (1981); *C.D.S. Services* v. *Petrock,* 218 Va. 1064, 243 S.E.2d 236 (1978).

In *Ashland Oil Co.* v. *Bean,* 225 Va. 1, 3, 300 S.E.2d 739, 740 (1983), we noted that the Commission has held that "there is no provision under the occupational disease law [Virginia's Workmen's Compensation Act] permitting recovery for aggravation of ordinary diseases of life," and "an ordinary disease of life aggravated by work environment is [not] compensable under the Act."

*Smith* v. *Fieldcrest Mills, supra,* and *Bergmann* v. *L & W Drywall,* 222 Va. 30, 278 S.E.2d 801 (1981), relied upon by claimant, are inapposite. In each case we remanded for the Commission to decide questions of fact, *i.e.,* whether the claimants suffered from an occupational disease and, if so, whether the disease was a contributing factor to their disability. In the instant case, the Commission, upon conflicting evidence, found that Caskey failed to prove that he has byssinosis, an occupational disease. By so doing it resolved the disputed question of fact in favor of Dan River.

Because this conclusion is supported by credible evidence, we cannot say it is plainly wrong as a matter of law. Accordingly, it will be

*Affirmed.*