480 S.E.2d 773

**SHAWNEE MANAGEMENT CORPORATION and Liberty Mutual Insurance Company**

v.

**Rhonda C. HAMILTON.**

**Record No. 0434–96–3.**

Court of Appeals of Virginia,
Salem.

Feb. 4, 1997.

Rehearing En Banc Granted March 19, 1997.

J. David Griffin, Winchester (Fowler, Griffin, Coyne & Coyne, P.C., on briefs), for appellants.

George L. Townsend, Staunton (Chandler, Franklin & O'Bryan, on brief), for appellee.

Present: MOON, C.J., and ELDER and BRAY, JJ.

MOON, Chief Judge.

Shawnee Management Corporation appeals the decision of the commission awarding Rhonda C. Hamilton benefits. The dispositive question is whether Shawnee must continue paying disability benefits to Hamilton who did not stop smoking cigarettes and/or lose weight as required by her treating physician in order to undergo surgery. We find that because Hamilton's failure to quit smoking renders her unable to receive medical treatment for her compensable injury, her refusal to stop smoking constitutes refusal of medical treat-

ment, and therefore precludes her right to compensation until she complies.

On October 25, 1991, Hamilton, a resident of Winchester, Virginia, slipped on a wet floor at her place of employment and injured her back. By agreement, an award was entered for temporary total disability benefits beginning November 2, 1991.

On January 25, 1993, Hamilton underwent back surgery to correct her injuries. About early April she moved from Winchester, Virginia, to Manassas, Virginia, but continued to travel back and forth to Winchester for treatment by Dr. Zoller. On July 20, 1993, Dr. Zoller released her to return to light work with several restrictions. In August, 1993, Shawnee sent a job description to Dr. Zoller, describing a cashier position at a Winchester Hardees. Shawnee intended to offer Hamilton the position pending Dr. Zoller's approval of the job. Dr. Zoller noted in Hamilton's medical records that:

I got a job description from Shawnee Corporation and I read it to [Hamilton] and I said that there was no way I could legitimately say no to this offer. They are bending over backwards to accommodate her and it certainly seems like it would be doable by anybody other than possibly a quadriplegic.

Hamilton testified that in late August Shawnee offered her the cashier position. She testified that she declined to take the position because her back still hurt and the hour and one-half commute each direction was excessive given that she would only work two or three hours each day. She testified, "I told [Dr. Zoller], you know, since I was so far away that I was going to try to babysit my daughter's kids. I didn't really look at as [sic] refusing, I just—it would have been too far to have drove [sic]." Hamilton also testified that she had looked for work within her capabilities. She testified: "I've applied for jobs. But, ... they don't really want someone that they have to limit. So, I didn't—I wasn't accepted." She also testified that during the two year period in which she could have returned to work, she did not register with the Virginia

Employment Commission and applied for work with only three stores.

On September 14, 1993, Shawnee filed an application to suspend Hamilton's benefits on the basis that she had refused selective employment within her residual capacity. Hamilton's benefits were suspended as of September 13, 1993, not on the basis of Shawnee's application, but because Hamilton had failed to keep the commission informed of her mailing address. In December, 1993, Hamilton moved back to Winchester, Virginia.

In August, 1994, Dr. Zoller referred Hamilton to Dr. John P. Kostuik at Johns Hopkins for a second opinion. Dr. Kostuik determined that additional surgery was needed. Both doctors agreed that the procedure should not be undertaken until Hamilton stopped smoking and lost some weight. On or about August 25, 1994, Dr. Zoller wrote to Shawnee's insurance carrier and reiterated that Hamilton could return to work and that she was once again living in Winchester. Dr. Zoller noted that the restrictions for work remained "totally unchanged" from July, 1993.

Hamilton testified that she had previously quit smoking in order to undergo the original back surgery in January, 1993. She stated that she refrained from smoking for sixteen to eighteen months, but explained that "my son got in trouble and my sister kept on, here take a drag and calm your nerves, calm your nerves. So I started up again." Hamilton testified that she smoked two packs of cigarettes a day at the time Drs. Zoller and Kostuik instructed her to stop in order to undergo the additional surgery. Since that time, Hamilton testified, she has reduced her smoking to five or so cigarettes a day. She has also gained approximately sixty pounds.

On January 3, 1995, Dr. Zoller wrote to Shawnee's insurer explaining that he had changed his mind regarding Hamilton's ability to return to work, stating that "it probably would have been more worthwhile to keep her on with off-work from that time [July 20, 1993] until the present time.... I feel that [Hamilton] should be considered off work the entire period of

time, never having been allowed to go back to work." Dr. Zoller noted on February 22, 1995 that Hamilton had not stopped smoking and that they could not proceed with surgery until she stopped.

On January 31, 1995, Hamilton filed a change in condition application seeking temporary total disability benefits beginning September 14, 1993. The deputy commissioner considered Hamilton's application and Shawnee's application still pending from September 14, 1993. The deputy commissioner found Hamilton's failure to stop smoking warranted continued suspension of her benefits until such time as she stopped in order to undergo the corrective surgery. The deputy commissioner specifically declined to reach the other defenses raised by Shawnee or Shawnee's application, although evidence was presented by the parties on these issues.

On Hamilton's appeal, the full commission reversed the deputy commissioner's ruling and summarily disposed of every defense raised by Shawnee and Shawnee's application.

### Smoking as Refusal of Medical Care

 Workers' compensation benefits may be suspended where a claimant refuses medical treatment. *Davis v. Brown & Williamson Tobacco Co.*, 3 Va.App. 123, 127, 348 S.E.2d 420, 422 (1986).

Here, Hamilton's continued smoking completely prohibits her from receiving treatment. Hamilton was informed unequivocally that before she could have surgery she must "quit [smoking] altogether." Her doctor explained to her that the surgery she required could not be performed while she continued to smoke and to suffer the effects of routine cigarette use. Until she quits smoking, she will remain totally disabled because of her injury and consequently unable to work. Hamilton's continued smoking constitutes a complete and total bar to her treatment and therefore bars her ability to reenter the work force.

Hamilton is faced with the choice of having to quit smoking entirely or to continue her current condition without treat-

ment. No evidence in the record proved that Hamilton is so addicted to tobacco that she cannot stop smoking. To the contrary, Hamilton testified that she had, on her doctor's order, previously stopped smoking for a period of sixteen to eighteen months. Further, Hamilton testified that she had reduced her smoking from two packs a day to five cigarettes a day. This record does not support a finding that Hamilton should be entitled to continue drawing benefits while she chooses to forgo the medical treatment determined by her doctor. Hamilton's decision to keep smoking, knowing it prevents her from having surgery, is no more or less than a decision not to undergo the medical treatment prescribed by her treating physician. Therefore, her benefits should be suspended.

Holding that Hamilton's claim for compensation was properly denied, we need not reach the additional issue raised by Shawnee concerning whether Hamilton may refuse selective employment because she has moved away from her original job location.

*Reversed.*

ELDER, Judge, dissenting.

I respectfully dissent because the majority's opinion disregards the commission's factual finding that appellant did not refuse medical treatment. Because the commission's factual findings are supported by credible evidence, I would affirm the commission's award.

Code § 65.2–603(B) bars a claimant from receiving further compensation if the employee unjustifiably refuses to accept medical services provided by the employer. Whether or not a claimant has "refused" medical treatment is a question of fact. "[F]actual findings of the commission are binding on appeal." *Spruill v. C.W. Wright Constr. Co.* 8 Va.App. 330, 332, 381 S.E.2d 359, 360 (1989); *see* Code § 65.2–706(A). When reviewing the factual findings of the commission on appeal, we are required to "review the evidence in the light most favorable to the prevailing party." *R.G. Moore Bldg. Corp. v.*

*Mullins,* 10 Va.App. 211, 212, 390 S.E.2d 788, 788 (1990). Furthermore, "[f]actual findings of the . . . commission will be upheld on appeal if supported by credible evidence." *James v. Capitol Steel Constr. Co.,* 8 Va.App. 512, 515, 382 S.E.2d 487, 488 (1989).

The commission found that claimant's current unsuccessful attempt to quit smoking was not a "conscious or willful refusal to follow the treatment recommendations of [claimant's] treating physicians regarding smoking." This finding is supported by credible evidence. Appellant testified that she had smoked cigarettes for over twenty-three years. She stated that although she quit smoking at the time of her first back surgery in January, 1993, she resumed the habit eighteen months later to relieve stress related to a family crisis. The record indicates that claimant first learned on December 8, 1994, during her appointment with Dr. Kostuik, that in order to undergo the additional back surgery she needed to resume work she would have to quit smoking. The evidence reveals that in the seven months between her appointment with Dr. Kostuik and the hearing before the deputy commissioner, claimant reduced her daily consumption of cigarettes by seventy-five percent. Claimant testified that at the time she saw Dr. Kostuik, she was smoking two packs of cigarettes a day. Dr. Zoller wrote in his examination notes on February 22, 1995 that claimant had reduced her smoking to ten cigarettes per day. At the hearing on June 8, 1995, claimant testified that she was down to a quarter of a pack per day and that she was still continuing her effort to "try and stop altogether." In addition, the record does not establish that employer offered claimant any medical treatment to assist her personal attempt to end her smoking habit. In light of claimant's long history, credible evidence supports the commission's finding that claimant's unsuccessful attempt to quit smoking does not constitute a willful refusal of the back surgery she needs to return to work.

In addition, the majority's reasoning also indicates that it did not view the evidence in the light most favorable to claimant, the prevailing party below. Specifically, the evidence of claimant's significant, continuing progress over a

seven-month period to end her twenty-three year smoking habit is circumstantial proof of her good faith effort to meet the conditions of her required back surgery. In addition, claimant has not rejected medical treatment to expedite her complete abandonment of cigarettes because employer has not offered such treatment. However, the majority does not construe this evidence in claimant's favor as required by our standard of review and instead concludes that "[i]t is mere supposition that Hamilton has done the best she can to stop." This conclusion is at odds with the evidence in the record when viewed in the light most favorable to claimant.

The majority's reasoning overlooks the limited role of an appellate court in cases appealed from the commission. As our Supreme Court has stated,

> We do not retry the facts before the Commission nor do we review the weight, preponderance of the evidence, or the credibility of witnesses. If there is evidence or reasonable inference that can be drawn from the evidence to support the Commission's findings, they will not be disturbed by this Court on appeal, even though there is evidence in the record to support contrary findings of fact.

*Caskey v. Dan River Mills, Inc.,* 225 Va. 405, 411, 302 S.E.2d 507, 510–11 (1983). Although the majority might not agree with how the commission weighed the evidence before it, this Court is not the fact finder in this case.

Because I would affirm the commission's conclusion that appellant did not refuse medical treatment, I would reach the second issue raised by employer: whether claimant unjustifiably refused suitable employment when she declined a position offered by employer. However, I would hold that this issue is now moot. *See Hankins v. Town of Va. Beach,* 182 Va. 642, 643–44, 29 S.E.2d 831, 832 (1944) (stating that once a controversy between litigants ceases to exist, "it is the duty of every judicial tribunal not to proceed to the formal determination of the apparent controversy . . ."). The commission awarded claimant temporary total disability benefits effective as of December 19, 1994, consistent with Dr. Zoller's revised opin-

ion. The commission did not order retroactive payments. Based on this award, no employment offered by employer can be suitable for claimant because claimant's incapacity to work has been total since December 19, 1994. Thus, any controversy arising from claimant's denial of employer's offer of employment has ceased to exist.

For the foregoing reasons, I respectfully dissent.

## UPON A PETITION FOR REHEARING EN BANC BEFORE THE FULL COURT

On February 14, 1997, came the appellee, by counsel, and filed a petition praying that the Court set aside the judgment rendered herein on February 4, 1997, and grant a rehearing en banc thereof.

On consideration whereof, the petition for rehearing en banc is granted, the mandate entered herein on February 4, 1997, is stayed pending the decision of the Court en banc, and the appeal is reinstated on the docket of this Court.

The parties shall file briefs in compliance with Rule 5A:35. It is further ordered that the appellee shall file with the clerk of this Court ten additional copies of the appendix previously filed in this case.