COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Moon, Judges Baker, Benton, Coleman, Elder,
        Bray, Fitzpatrick and Overton
Argued at Richmond, Virginia


SHAWNEE MANAGEMENT CORPORATION AND
 LIBERTY MUTUAL INSURANCE COMPANY
                                        OPINION BY
v.    Record No. 0434-96-3             JUDGE LARRY G. ELDER
                                        NOVEMBER 4, 1997
RHONDA C. HAMILTON


UPON A REHEARING EN BANC

FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

        J. David Griffin (Fowler, Griffin, Coyne &
        Coyne, P.C., on brief), for appellants.

        George L. Townsend (Chandler, Franklin &
        O'Bryan, on brief), for appellee.


        Shawnee Management Corporation (employer) appeals an order

of the Workers' Compensation Commission awarding temporary total

disability benefits to Rhonda C. Hamilton (claimant).  Employer

contends that the commission erred when it concluded that

claimant's failure to entirely cease smoking cigarettes so that

she could undergo back surgery was not a "refusal" of medical

care under Code § 65.1-603(B).  Employer also contends that the

commission erred when it concluded that claimant justifiably

refused an offer of selective employment.  A panel of this Court

reversed the commission's award, holding that claimant's failure

to stop smoking completely as directed by her physicians was an

unjustified refusal of the back surgery she needed in order to

return to work.  See Shawnee Management Corp. v. Hamilton, 24 Va.

App. 151, 480 S.E.2d 773 (1997).  We granted claimant a rehearing

en banc. For the reasons that follow, we affirm the commission's award of benefits.

I.

FACTS

In October, 1991, claimant lived in Winchester, Virginia and was employed as a crew person at a Hardee's Restaurant managed by employer. Claimant slipped on a wet floor in the restaurant and injured her back. The parties entered into a memorandum of agreement for temporary total disability benefits. At the time of her accident, claimant had smoked cigarettes regularly for twenty years.

In January, 1993, claimant's treating physician, Dr. Zoller, performed a "lumbar fusion" operation on claimant to treat her back injury. Upon admission to the hospital for the surgery, claimant ceased smoking cigarettes entirely and maintained her abstinence from smoking for about eighteen months. About two months after her surgery, claimant moved from Winchester to Manassas, Virginia.

Claimant's recovery from the back surgery was not smooth. During the surgery, she suffered "fairly significant brachioplexus injuries" to both of her arms due to the positioning of her body during the procedure. Her recovery from these injuries took several months. In addition, while rehabilitating her back, claimant experienced intermittent but severe pain in her back, buttocks, and legs.

On July 20, 1993, Dr. Zoller wrote to employer's insurer that claimant "could be returned to some light duty work." Dr. Zoller set forth numerous restrictions on any work performed by claimant, including a limit on claimant's driving to "20 miles, or 30 minutes, continuously, and no more than twice daily." On August 11, employer sent a job description to Dr. Zoller regarding a position it planned to offer claimant as a cashier at a Hardee's Restaurant in Winchester. The job description included several accommodations to match the restrictions on claimant's work imposed by Dr. Zoller. Dr. Zoller approved the job description on August 25. On September 9, claimant declined employer's offer to return to work in the modified cashier's position because it required a 90 minute commute each way from Manassas to Winchester.

On September 13, 1993, employer filed an application for a hearing to suspend claimant's disability benefits on the ground that she had "refused selective employment within [her] physical capacity." The commission subsequently suspended claimant's benefits, but it did so on the ground that claimant had failed to keep it informed of her current mailing address.

In December, 1993, claimant moved back to Winchester. Sometime in mid-1994, she resumed smoking cigarettes to "calm her nerves" when her son "got in trouble." Her consumption of cigarettes increased to two packs per day.

On September 26, 1994, Dr. Zoller wrote that claimant

continued to experience pain in her back and right leg and that he had exhausted nearly all non-surgical options to treat her pain. He referred claimant to Dr. Kostuik at the Johns Hopkins Orthopaedic Center in Baltimore, Maryland for a second opinion.

On December 8, Dr. Kostuik examined claimant, concluded that she had "a nonunion of her fusion," and opined that she might benefit from an "anterior innerbody fusion." Dr. Kostuik gave claimant "a good prognosis for recovery" if she underwent the proposed operation. However, Dr. Kostuik told claimant that "she has to stop smoking and try to [lose] some weight" before he would perform the surgery.

On December 19, Dr. Zoller examined claimant and concurred with Dr. Kostuik's opinion that an anterior innerbody fusion was "appropriate" treatment. Like Dr. Kostuik, Dr. Zoller told claimant that quitting smoking "altogether" was a precondition of the proposed operation. When Dr. Zoller saw claimant again on February 22, 1995, claimant stated that she was still smoking cigarettes but that her consumption was "down to about 10 cigarettes a day."

On January 3, 1995, Dr. Zoller wrote to employer's insurer that he had reconsidered his earlier opinion that claimant was capable of light duty work. He stated:

I sent [claimant] back to work on July 20, 1993 assuming that possibly work would help improve things, but this was probably a mistake, and I think, in retrospect, it probably would have been more worthwhile to keep her on with Off-Work from that time until the present time.

                    *    *    *    *    *    *    *

              I feel that [claimant] should be
         considered off work the entire period of
         time, never having been allowed to go back to
         work.


     On February 6, 1995, claimant filed a claim with the

commission for temporary total disability benefits beginning on

September 14, 1993, the day after the suspension date of her

earlier award.  She alleged a change in condition and cited Dr.

Zoller's revised medical opinion that she "shouldn't have been

released to go back to work."  Employer raised several defenses,

including that claimant had unjustifiably refused medical

treatment by failing to quit smoking and that claimant had

refused selective employment in September, 1993.

     On June 8, 1995, a deputy commissioner held a hearing on

claimant's claim.  At the hearing, claimant testified that since

Dr. Kostuik informed her that she must quit smoking, she had

reduced her consumption of cigarettes from two packs per day to

"about a quarter" pack per day.  She testified that she was

"still continuing to try and stop altogether."  There was no

evidence in the record that employer had ever offered or that

claimant had refused any medical treatment to assist her personal

effort to stop smoking.

     The deputy commissioner denied claimant's claim.  The deputy

commissioner first held that Dr. Zoller's revised medical opinion

that claimant's disability had always been "total" constituted a

                              –5–

change in condition.  However, the deputy commissioner also held that claimant's failure to cease smoking entirely was an unjustified refusal of the anterior innerbody fusion recommended by both Dr. Kostuik and Dr. Zoller.

Claimant appealed, and the commission reversed.  The commission held that claimant's failure to stop smoking was not a "refusal" of the proposed back surgery.  It reasoned:

> The evidence in this case shows no such conscious or willful refusal [by claimant] to follow the treatment recommendations of her physicians regarding smoking.  Rather, the evidence shows that the claimant has reduced her smoking habit by approximately 75%, without the aid of any prescribed medical or psychological programs, which we find demonstrates a substantial personal effort. . . .  We are persuaded by this evidence that the claimant has made reasonable efforts that are continuing to try to end a habit . . . ingrained by usage over a period of approximately 24 years.

The commission also held that claimant's refusal of the cashier's position offered to her in September, 1993, was justified because claimant's commute at the time would have violated the driving restrictions imposed by Dr. Zoller.  The commission entered an award of temporary total disability benefits in favor of claimant retroactive to December 19, 1994, the date of the examination that prompted Dr. Zoller to revise his medical opinion.

II.

REFUSAL OF MEDICAL CARE

Employer argues that the commission erred when it found that claimant had not "refused" the back surgery she needed to return

to work by failing to quit smoking entirely as of the date of the hearing. Because credible evidence supports the commission's finding that claimant had not refused to stop smoking, we find no error.

Code § 65.2-603(B) bars a claimant from receiving further compensation if the claimant unjustifiably refuses to accept medical services provided by the employer. Whether or not a claimant has "refused" medical treatment is a question of fact. See Stump v. Norfolk Shipbuilding & Dry Dock Corp., 187 Va. 932, 934-35, 48 S.E.2d 209, 210 (1948) (treating the commission's determination of whether a claimant has refused medical services as a question of fact); see also Chesapeake Masonry Corp. v. Wiggington, 229 Va. 227, 229-30, 327 S.E.2d 121, 122 (1985) (holding that the commission's finding that the claimant unjustifiably refused medical care was supported by credible evidence and therefore binding on appeal). It is fundamental that "factual findings of the commission are binding on appeal" if supported by credible evidence. Spruill v. C.W. Wright Constr. Co., 8 Va. App. 330, 332, 381 S.E.2d 359, 360 (1989); see Code § 65.2-706(A).

> We do not retry the facts before the Commission nor do we review the weight, preponderance of the evidence, or the credibility of witnesses. If there is evidence or reasonable inference that can be drawn from the evidence to support the Commission's findings, they will not be disturbed by this Court on appeal, even though there is evidence in the record to support contrary findings of fact.

-7-

Caskey v. Dan River Mills, Inc., 225 Va. 405, 411, 302 S.E.2d 507, 510–11 (1983).

We hold that the evidence was sufficient to support the commission's finding that claimant's current unsuccessful attempt to quit smoking was not a "conscious or willful refusal to follow the treatment recommendations of her physicians regarding smoking." Viewing the evidence in the light most favorable to claimant, the prevailing party below, see R.G. Moore Bldg. Corp. v. Mullins, 10 Va. App. 211, 212, 390 S.E.2d 788, 788 (1990), the evidence proves that claimant was in the midst of an ongoing, good faith effort to end her smoking habit at the time of the hearing before the deputy commissioner. Claimant testified at the hearing that she had smoked cigarettes for over 23 years. Although she did quit smoking at the time of her first back surgery in January, 1993, she testified that she resumed the habit sometime in mid-1994. The evidence shows that in the seven months between claimant's appointment with Dr. Kostuik, when she was first directed to quit smoking, and the hearing before the deputy commissioner, claimant reduced her daily consumption of cigarettes by about 87%. Claimant testified that she was smoking two packs of cigarettes per day at the time she first saw Dr. Kostuik in December, 1994. Dr. Zoller wrote in his examination notes on February 22, 1995 that claimant had reduced her smoking to ten cigarettes per day. At the hearing on June 8, 1995, claimant testified that she was smoking about a quarter of a pack

per day and was still continuing her effort to "try and stop altogether."  In addition, the record fails to establish that claimant rejected medical treatment that would have expedited her complete abandonment of cigarettes or that employer offered such treatment.  In light of claimant's long history with cigarettes, the sizable reduction in her smoking, and her testimony that she had not abandoned her current effort to quit, credible evidence supports the commission's finding that claimant had not "refused" to comply with her physicians' directives to stop smoking.

### III.

### REFUSAL OF SELECTIVE EMPLOYMENT

Employer also argues that claimant unjustifiably refused selective employment when she declined the cashier position offered to her in September, 1993.  See Klate Holt Co. v. Holt, 229 Va. 544, 545, 331 S.E.2d 446, 447 (1985); Talley v. Goodwin Bros. Lumber Co., 224 Va. 48, 52, 294 S.E.2d 818, 820 (1982).  We disagree.

Relying on Dr. Zoller's revised medical opinion, the commission concluded that claimant was totally disabled as of December 19, 1994 and ordered benefits resumed at that date. Based on this determination, no employment offered by employer could possibly be suitable for claimant because claimant has no residual capacity to work.

Because the commission held that claimant is totally disabled, which employer does not contest on appeal, we hold that

this issue of selective employment is now moot.  Once a controversy between litigants ceases to exist, "it is the duty of every judicial tribunal not to proceed to the formal determination of the apparent controversy . . . ."  Hankins v. Town of Va. Beach, 182 Va. 642, 643-44, 29 S.E.2d 831, 832 (1944).

For the foregoing reasons, we affirm the commission's award.

Affirmed.