COURT OF APPEALS OF VIRGINIA


Present:  Judges Bumgardner, Humphreys and Agee
Argued at Salem, Virginia


DAN RIVER, INC.
                                   MEMORANDUM OPINION* BY
v.   Record No. 2222-00-3     JUDGE RUDOLPH BUMGARDNER, III
                                        APRIL 24, 2001
BETTY L. OWEN


        FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            James A. L. Daniel (Martha White Medley;
            Daniel, Vaughan, Medley & Smitherman, P.C.,
            on brief), for appellant.

            J. Gregory Webb (Michie, Hamlett, Lowry,
            Rasmussen & Tweel, on brief), for appellee.


     Dan River, Inc. seeks reversal of the Workers' Compensation

Commission's award of benefits to Betty L. Owen.  It contends

the employee failed to establish as a matter of law that she was

entitled to benefits.  For the following reasons, we affirm in

part and reverse in part.

     "Decisions of the commission as to questions of fact, if

supported by credible evidence, are conclusive and binding on

this Court."  Manassas Ice & Fuel Co. v. Farrar, 13 Va. App.

227, 229, 409 S.E.2d 824, 826 (1991).  "If there is evidence or

reasonable inference that can be drawn from the evidence to

support the Commission's findings, they will not be disturbed by

─────────────────
        * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

this Court on appeal, even though there is evidence in the record to support contrary findings of fact."  Caskey v. Dan River Mills, Inc., 225 Va. 405, 411, 302 S.E.2d 507, 510-11 (1983).

The 61-year-old employee injured her back at work on December 16, 1997, while lifting a king-size comforter set, "bed-in-a-bag," over her head.  When she lifted the bag and placed it in a cardboard box, she felt a burning pain across the lower part of her back.  She has not worked since December 21, 1997.  The employee testified her painful symptoms started after the work accident.

On December 18, 1997, the employee saw Dr. Thomas M. Alabanza, a primary care physician.  She selected him from a list of physicians in the employer's health plan.  She advised him that she pulled a muscle in her back while lifting boxes at work.  On December 22, 1997, Dr. Alabanza took her out of work for ten days and prescribed medications for her pain.  She gave the employer her work release that day and, at its clinic, selected orthopedic surgeon Dr. Lawrence F. Cohen as her treating physician.

Dr. Alabanza referred the employee to Dr. J. Stephen Eggleston for chiropractic care.  Between February 2, 1998 and February 18, 1998 she visited him ten times.  The employee, who denied previously having any lower back problems, told him that on December 16, 1997 she was lifting a king-size comforter over

-

her head and had immediate unrelenting pain.  On February 4, 1998, Dr. Eggleston diagnosed the employee with a compression fracture.  He stated, "it's pretty clear to me that [the cause of the fracture] is consistent with the work injury described by the patient."  Dr. Eggleston concluded the employee was totally disabled from December 20, 1997 through February 27, 1998.

On February 16, 1998, Dr. Eggleston called Dr. Alabanza regarding the employee's insurance coverage.  Gateway Southern Health authorized only ten visits for the year.  Dr. Eggleston indicated the employee had one visit left, but needed ten more over the next month for acupuncture and physical therapy.  Gateway did not authorize more visits.  With "no more than 20% improvement," and a "guarded" prognosis, Dr. Eggleston returned the employee to Dr. Alabanza on February 18, 1998.

Dr. Alabanza referred the employee to Dr. Cohen on February 2, 1998.  On February 25, Dr. Cohen diagnosed her with a compression fracture at T12 and kyphosis.  He recommended a chairback brace to alleviate her symptoms, which she wore.  On March 4, 1998, Dr. Cohen recommended a bone density evaluation and CT scan to determine the degree of the employee's osteoporosis or osteopenia.  The CT scan was completed March 6, 1998.  In a letter to counsel dated July 16, 1998, Dr. Cohen stated that due to the employee's osteoporosis or osteopenia, he "probably will not [be able] to give any type of opinion as to whether this was a work related injury or not."

-

The employee sought a second opinion from Dr. Donald P. K. Chan at the University of Virginia. After evaluating the employee and reviewing her records, Dr. Chan opined that her disability is "most likely due to the lifting accident . . . and pre-existing . . . osteoporosis."

The employee filed a claim with the commission November 12, 1998. The deputy commissioner determined she had "set forth a particular incident occurring at a reasonable [sic] specific time." The deputy denied the employee's claim, however, because she "failed to prove that her disability and medical treatment are causally related" to the work incident.

The employee appealed. In its December 17, 1999 opinion, the full commission reversed the deputy's finding of causation and remanded the case for consideration of the employer's previously filed defenses. At the second hearing, the deputy commissioner determined the employee was totally disabled, and under no obligation to market her residual work capacity, from December 22, 1997 through April 19, 1998 and from September 21, 1998 forward.

The employer appealed, and the full commission affirmed the deputy's award of benefits as modified.[1] One commissioner

---

[1] The commission modified the deputy's date at which the employee's second period of disability commenced, from September 21, 1998 to June 29, 1998 and continuing.

-

dissented on the ground that the employee unjustifiably refused medical treatment.

First we consider whether the commission erred in finding that the employee established a causal connection between the work-related injury and her disability. The employer conceded it did not preserve its objection to the deputy's finding that she suffered an injury by accident. That issue is uncontested, and we do not address it.

The commission's determination of causation and its resolution of conflicting medical opinions are questions of fact. Corning, Inc. v. Testerman, 25 Va. App. 332, 339, 488 S.E.2d 642, 645 (1997) (causation); Celanese Fibers Co. v. Johnson, 229 Va. 117, 120-21, 326 S.E.2d 687, 690 (1985) (conflicting medical opinions). The employee's testimony regarding causation may be considered, particularly when the medical testimony is inconclusive. Dollar General Store v. Cridlin, 22 Va. App. 171, 176, 468 S.E.2d 152, 154 (1996). Where an employee's pre-existing condition is aggravated, accelerated, or exacerbated by a work-related injury, the resulting disability is covered under the Workers' Compensation Act. Olsten of Richmond v. Leftwich, 230 Va. 317, 319-20, 336 S.E.2d 893, 895 (1985).

The commission's finding, that the employee established that it was more probable than not that her disability was caused, at least in part, by the work-related accident, is

-

supported by credible evidence. The employee suffered from osteoporosis and osteopenia. After the accident, she was diagnosed with a T12 compression fracture and for the first time experienced lower back pain. Dr. Eggleston opined, "As far as the cause of the fracture, it's pretty clear to me that it is consistent with the work injury described by the patient."

Dr. Cohen could not state to a reasonable degree of medical certainty whether the employee's accident caused her disability because he had an incomplete medical record to rule out other possible causes. Dr. Cohen was skeptical because a compression fracture is not likely to result from a lifting incident. He conceded, however, that due to the employee's osteoporosis, a lifting incident could have caused her fracture.

The commission relied on the opinions of Drs. Eggleston and Chan and found the independent records review conducted by Dr. J. Gordon Burch unpersuasive. The employer attempts to discredit the opinions of Drs. Alabanza, Eggleston, and Chan because they provided unauthorized treatment. The fact that their services were unauthorized does not mean that their opinions are not credible evidence on causation.

It is the commission's duty to weigh the evidence and determine the credibility of the witnesses. "We do not retry the facts" on appeal. Caskey, 225 Va. at 411, 302 S.E.2d at 510. The commission was free to adopt the opinions of Drs. Eggleston and Chan. Its finding was also supported by the

-

employee's testimony and Dr. Alabanza's notations that relate her disability to the accident. Finding no error, we affirm the commission's decision that the employee established a causal connection between her injury and the work-related accident.

When a physician releases an employee to light duty work, she has an obligation to market her residual work capacity. Code § 65.2-510. The commission determined that the employee was disabled and released from work from December 22, 1997 through April 19, 1998 and June 29, 1998 and continuing. The issue is whether the employee marketed her residual work capacity from April 20 through June 28, 1998. She concedes she has not looked for work after December 22, 1997. Thus, the record supports the commission's finding that she is not entitled to an award from April 20, 1998 through June 28, 1998, the period in which she was released to light duty work.

Next, we consider whether the employee is barred from receiving compensation for unjustifiably refusing to accept medical services offered by the employer. Code § 65.2-603; Shawnee Management Corp. v. Hamilton, 25 Va. App. 672, 678, 492 S.E.2d 456, 459 (1997) (en banc). Whether or not she refused medical treatment is a question of fact. Id. In determining whether the employee's refusal of treatment is justified, we review the evidence from her perspective and "in light of the information available to [her]" at the time of her decision.

-

<u>Holland v. Virginia Bridge & Structures, Inc.</u>, 10 Va. App. 660, 662, 394 S.E.2d 867, 868 (1990) (citation omitted).

On March 4, 1998, Dr. Cohen recommended the employee undergo a CT scan of the area surrounding the compression fracture to "see what the anatomy is and see if there is a burst quality to this." He also wanted to get a bone density evaluation. The CT scan was done March 6, and Dr. Cohen reviewed it March 9, 1998. On April 20, 1998, Dr. Cohen explained to the employee that the bone scan results would rule out a tumor or infection, enabling him to determine why she was still in so much pain. The employee, however, "adamantly refused the bone scan," noting it was too expensive.

On May 18, 1998, Dr. Cohen noted the employee "is still having severe pain." He recommended she start getting out of the back brace and asked "if she wanted to see Dr. Fraifeld, a pain management doctor." She refused this option. Then he discussed surgical intervention with her, for which she would need to have an MRI.

The MRI was done July 1, 1998. It revealed "chronic compression deformity of T12," with no sign of a herniated or bulging disc. Dr. Cohen's July 27, 1998 office note states that the MRI revealed a kyphotic deformity. He again discussed surgery with the employee, which he noted was a major procedure. He recommended a CT scan of the employee's abdomen to discern the source of her cramps. She refused this option despite

-

Dr. Cohen's belief that the fracture had healed and that a tumor could be causing her pain. He also recommended she get a second opinion.

The employee visited with Dr. Chan at UVA for a second opinion regarding causation. Dr. Chan's impression, documented in his September 4, 1998 letter, indicates the employee "has a compression fracture at T12, most likely due to the lifting accident and also most likely because of pre-existing osteopenia from post menopausal osteoporosis." He concluded, "I think her continued pain is the result of this fracture."

The commission affirmed the deputy's finding that the employee "did not unjustifiably refuse to undergo the recommended surgical procedure." On appeal, the employer does not maintain that she needed to undergo the surgery. It was a complicated procedure, and Dr. Cohen offered only a 60% rate of success. The employer maintains that the employee's refusal to undergo any of the three courses of treatment recommended by her treating physician was not justified.

Workers' compensation benefits are conditioned upon the employee's undergoing necessary medical treatment to place the cost of treatment on the employer and restore the employee's health enabling her to return to work. Davis v. Brown & Williamson Tobacco Co., 3 Va. App. 123, 128, 348 S.E.2d 420, 422 (1986) ("the Commission . . . [must] focus upon the purpose of the legislature in requiring the employer to furnish and

-

<u>obligating the employee to receive</u> medical attention" (emphasis added)).  Where the employee refuses prescribed treatment and such refusal results in an aggravation of, or impediment to the cure of, the disability, the employee has not taken reasonable steps to limit the employer's liability.  Id. at 128-29, 348 S.E.2d at 423.

The employee refused to undergo any of the recommended treatments:  surgery, bone scan, or pain management.  It does not serve the purposes of the Act for the employee to collect benefits but sit idle and refuse every course of recommended medical treatment that could improve her condition.  The employee's refusal to have the surgery was justified considering her age, the seriousness of the procedure, and the poor odds of its success.  But she also refused the bone scan, which would have permitted the doctor to diagnose the cause of her continuing pain.  Finally, she refused to get pain management treatment to reduce or minimize her pain.  The employee cannot say no to every avenue of treatment.

We affirm the commission's award of benefits to the employee during her periods of disability, December 22, 1997 through April 19, 1998 and June 29, 1998 and continuing, and its decision that she is not entitled to benefits from April 20, 1998 through June 28, 1998, because she was released to light duty and did not market her residual capacity.  However, we reverse the decision that the employee was justified in refusing

-

medical treatment because the commission did not determine whether her refusal to undergo the bone scan or pursue pain management was justified.[2]  Accordingly, we affirm in part, and reverse and remand in part for further proceedings consistent with this opinion.

<u>Affirmed in part,</u>
<u>and reversed and</u>
<u>remanded, in part.</u>

---

[2] The employee denied she refused to undergo the bone scan. She claimed Dr. Cohen told her the procedure was not necessary and recommended she have it later.  The commission did not indicate if their decision was based on believing the employee's version and discrediting the doctor's version.