COURT OF APPEALS OF VIRGINIA


Present: Judges Willis, Bumgardner and Agee
Argued at Salem, Virginia


DOUBLE M COAL COMPANY AND
 NATIONAL UNION FIRE INSURANCE
 COMPANY OF PITTSBURGH
                                        MEMORANDUM OPINION* BY
v.    Record No. 0560-01-3           JUDGE JERE M. H. WILLIS, JR.
                                            OCTOBER 16, 2001
SCOTT WAYNE COLLINS


         FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            S. Vernon Priddy III (Sands Anderson Marks &
            Miller, on brief), for appellants.

            D. Allison Mullins (Lee & Phipps, P.C., on
            brief), for appellee.


    On appeal from a decision of the Workers' Compensation

Commission, Double M Coal Company and its insurer, National

Union Fire Insurance Company of Pittsburgh (together DMCC),

contend that the commission erred (1) in holding that Collins

established compensable disability within the two-year statute

of limitations contained in Code § 65.2-601, (2) in holding that

Collins proved a change in condition, (3) in holding that

Collins adequately marketed his residual work capacity, (4) in

disregarding their defense that Collins had to cure a refusal to

cooperate with medical treatment, and (5) in holding that

---

        * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

Collins had not failed to cooperate with medical treatment. Finding no error, we affirm the commission's decision.

## I.  BACKGROUND

On January 22, 1998, Scott Wayne Collins was employed as a coal miner by Double M Coal Company.  On that day, a rock fell on him.  He was knocked backward where he struck a tire on a bolt machine.  He alleged injuries to his back, left arm, left shoulder and neck.

By opinion issued September 18, 1998, the deputy commissioner determined that Collins had sustained an injury to his left ulnar nerve and his left shoulder but that his back condition was not causally related to the occupational accident. The deputy commissioner entered an award for medical benefits, but awarded no indemnity benefits because Collins was totally disabled for one day only and had failed to market his residual work capacity.  The full commission affirmed.

On October 16, 1998, Collins filed a change-in-condition application, seeking temporary total disability benefits beginning October 1, 1998, and continuing.  By opinion dated March 1, 2000, the deputy commissioner denied Collins' claim, finding no proof of disability causally related to the occupational accident.

On January 12, 2000, Collins filed a change-in-condition application, seeking temporary total disability benefits beginning December 15, 1999, and continuing.  The deputy

-

commissioner awarded temporary total disability benefits to Collins, finding that he had established a change in condition and that he had marketed his residual work capacity. She further ruled that the March 1, 2000 opinion had not held that Collins failed to cooperate and, therefore, had impressed upon him no obligation to cure.

The full commission affirmed.

## II.  TWO-YEAR STATUTE OF LIMITATIONS

DMCC contends that the commission lacked jurisdiction to award Collins disability benefits because he failed to prove a disability existing within the two-year statute of limitations contained in Code § 65.2-601.[1]  Relying on Mayberry v. Alcoa Bldg. Prods., 18 Va. App. 18, 441 S.E.2d 349 (1994),[2] DMCC argues that, in addition to filing a claim for benefits within the two-year statute of limitations period, Collins was also required to prove an "awardable" work incapacity within two years from the date of his accident.  DMCC argues that, because

---

[1] Code § 65.2-601 provides that "[t]he right to compensation under this title shall be forever barred, unless a claim be filed with the Commission within two years after the accident."

[2] The issue in Mayberry was whether the claimant had an "awardable work incapacity within two years from the date of his accident."  Mayberry, 18 Va. App. at 19, 441 S.E.2d at 349. Mayberry did not miss any time from work until two years and two months after the date of his accident, and his initial disability occurred a full two months after the statute of limitations had expired.  We concluded that the claim was barred by the statute of limitations "[b]ecause Mayberry did not file a timely application or demonstrate any disability during the two year period . . . ."  Id. at 20, 441 S.E.2d at 350.

-

Collins could not prove an "awardable" work incapacity until Dr. Moore's January 25, 2000 work restrictions, which was beyond the two-year period, Collins' claim is time barred.

DMCC argues on brief that "[t]he Full Commission did not find that any medical evidence adduced at this hearing demonstrated disability causally related to [Collins'] January 22, 1998 accident before the January 25, 2000 report by Dr. Moore." This is an inaccurate reading of the full commission's decision.

While the deputy commissioner determined that Collins did not establish entitlement to an award of disability benefits prior to Dr. Moore's January 25, 2000 opinion issuing permanent restrictions, the full commission held:

> There is no question . . . that [Collins] was partially disabled before January 25, 2000.
>
> For example, on December 13, 1999, Dr. Moore examined [Collins] for his "ulnar nerve palsy," with complaints of "L arm number and number," and on January 25, 2000, Dr. Moore's restrictions listed "left ulnar neuropathy" as a basis for the restrictions. There was no indication, however, that this condition was new to [Collins]. To the contrary, Dr. Moore noted that [Collins] had suffered from this condition since "rock fall in mines." Thus, Dr. Moore issued his restrictions on January 25, 2000, when requested; [Collins] suffered from disability well before then. Regardless, in a prior opinion issued September 18, 1998, the deputy commissioner found that [Collins] was only partially disabled and declined to award compensation benefits because he did not prove adequate marketing. Therefore,

-

> unlike the employee in Mayberry, who was not able to "demonstrate any disability during the two year period" after the accident, the Commission has already determined that [Collins] was disabled within two years after the compensable accident.

Credible evidence supports this finding. Moreover, DMCC's reliance on Mayberry is misplaced. Although we held in Mayberry that the claim was time barred, we said: "Had Mayberry filed a claim for compensation benefits before the statute had run, or received a formal award, he would have been eligible for Workers' Compensation benefits." Mayberry, 18 Va. App. at 21, 441 S.E.2d at 351. Here, Collins, in fact, did file his claim for benefits before the statute had run. Collins' accident occurred on January 22, 1998, and his current claim was filed on January 12, 2000. Therefore, the claim filed by Collins is not barred by Code § 65.2-601.

### III. CHANGE IN CONDITION

"General principles of workman's compensation law provide that '[i]n an application for review of any award on the ground of change in condition, the burden is on the party alleging such change to prove his allegations by a preponderance of the evidence.'" Great Atl. & Pac. Tea Co. v. Bateman, 4 Va. App. 459, 464, 359 S.E.2d 98, 101 (1987) (quoting Pilot Freight Carriers, Inc. v. Reeves, 1 Va. App. 435, 438-39, 339 S.E.2d 570, 572 (1986)). Factual findings made by the commission will be upheld on appeal if supported by credible evidence. See

-

James v. Capitol Steel Constr. Co., 8 Va. App. 512, 515, 382 S.E.2d 487, 488 (1989).

The commission ruled that Collins "was partially disabled because of his left arm condition, and was under Dr. Moore's restrictions as of January 25, 2000." In so ruling, the commission found as follows:

> The medical evidence indicated that Dr. Moore treated [Collins] for his arm and shoulder problems since December 1998. On January 25, 2000, Dr. Moore noted that [Collins] "needs restrictions, rock fall in mines -- L arm -- ulnar nerve, L shoulder -- rotator cuff, back injury, anxiety, depression." Dr. Moore listed the following diagnoses: "Left ulnar neuropathy -- comp injury; degenerative disc disease -- thoracic -- previous injury; left rotator cuff injury -- comp injury; anxiety with depression." He gave the following restrictions:
>
> > (1) No gross or fine manipulation with [left] hand. No lifting over 1 lbs [with] left arm. No lifting above shoulder level with left arm. (2) No lifting [with] back over 5 lbs. No bending, stooping, climbing, squatting. (3) Rt. arm should be free to use Colorado crutch when walking or standing. (4) Walking or standing -- 2 hours in an 8 hour day. (5) Sitting -- 3 hours in an 8 hour day. (6) driving -- up to 20 minutes at a time.
>
> > \* \* \* \* \* \* \*
>
> The deputy commissioner acknowledged that Dr. Moore's restrictions included items not related to [Collins'] left-arm condition, such as restricted bending, sitting, standing, and driving. We believe the deputy commissioner reasonably concluded,

-

however, that Dr. Moore's first restriction
of "no gross or fine manipulation" with the
left hand, as well as limited lifting with
the left arm, concerned [Collins']
compensable left-arm neuropathy.  As for the
causal connection between [Collins']
left-arm condition and his restricted
activities, Dr. Moore clearly indicated that
his condition was "comp injury" caused by
"rock fall in mines."  Moreover, Dr. Moore
has treated [Collins] for this problem since
December 1998.

As the fact finder, the commission was entitled to weigh the medical evidence and to accept the opinion of Dr. Moore, Collins' treating physician since the accident.  Dr. Moore's medical reports and opinions constitute credible evidence to support the commission's finding that Collins "was partially disabled because of his left arm condition, and was under Dr. Moore's restrictions as of January 25, 2000."  Accordingly, that finding is binding and conclusive upon us on appeal.  See id.

IV.   FAILURE TO MARKET RESIDUAL WORK CAPACITY

DMCC next argues that the commission erred in finding that Collins adequately marketed his residual work capacity.

A partially disabled employee is required to make reasonable efforts to market his residual earning capacity to be entitled to receive continued benefits.  See National Linen Serv. v. McGuinn, 8 Va. App. 267, 269, 380 S.E.2d 31, 33 (1989). "In determining whether a claimant has made a reasonable effort to market his remaining work capacity, we view the evidence in

-

the light most favorable to . . . the prevailing party before the commission." Id. at 270, 380 S.E.2d at 33. "What constitutes a reasonable marketing effort depends upon the facts and circumstances of each case." Greif Companies (GENESCO) v. Sipe, 16 Va. App. 709, 715, 434 S.E.2d 314, 318 (1993).

At the hearing before the deputy commissioner, Collins testified that he made "between four and six" contacts a week in his attempt to market his residual work capacity. Further, he submitted a list of potential employers that he contacted. The commission found that Collins' "efforts . . . were reasonable." The commission's finding is supported by credible evidence, i.e., Collins' testimony and his list of contacts, and will not be disturbed on appeal.

## V. CURE OF REFUSAL OF MEDICAL TREATMENT

Next, DMCC contends that Collins was required to show that he cured a refusal of medical treatment. In a March 1, 2000 opinion on an earlier change-in-condition claim, the deputy commissioner held:

> We find no medical evidence supporting
> [Collins'] disability based upon his left
> ulnar nerve and left shoulder injury. In
> fact, we cannot find medical evidence
> supporting [Collins'] disability based upon
> his noncompensable back injury. We believe
> that [Collins] failed to cooperate with the
> physical therapist performing his Functional
> Capacity Evaluation. We also believe that
> he was somewhat recalcitrant with his own
> doctors. Based upon all of the
> circumstances of this case, we find that
> [Collins] has failed in his burden of

-

> proving that he suffered a change in circumstances and/or that he has been temporarily totally disabled since October 1, 1998.

Collins v. Double M Coal Co., VWC File No. 190-13-92 (Mar. 1, 2000). DMCC now argues that Collins was required to show that he "cured" this "refusal" before he can be awarded benefits for his present claim.

DMCC's reliance on the March 1, 2000 opinion is based on the deputy commissioner's dictum following his decision not to award benefits. In the March 1, 2000 opinion, the deputy commissioner stated, "[Collins] failed to cooperate with the physical therapist performing his Functional Capacity Evaluation," and "[Collins] was somewhat recalcitrant with his own doctors."

We do not believe the deputy commissioner's dictum is relevant to the holding that Collins had failed to prove disability. Further, these two statements by the deputy commissioner in no way establish that Collins refused a surgical decompression procedure on his left arm. Therefore, Collins was under no duty to "cure" any "refusal" of medical treatment. As the commission correctly determined, "[DMCC's] 'failure to cure' defense was, in essence, a defense that [Collins] refused reasonable and necessary medical treatment under Code § 65.2-603."

-

VI. <u>REFUSAL OF MEDICAL TREATMENT UNDER CODE § 65.2-603</u>

Next, we consider whether Collins is barred from receiving compensation for unjustifiably refusing to accept medical treatment. <u>See</u> Code § 65.2-603; <u>Shawnee Management Corp. v. Hamilton</u>, 25 Va. App. 672, 678, 492 S.E.2d 456, 459 (1997) (<u>en banc</u>). Whether or not he refused medical treatment is a question of fact. <u>Id.</u> In determining whether Collins' refusal of treatment is justified, we review the evidence from his perspective and "in light of the information available to [him]" at the time of his decision. <u>Holland v. Virginia Bridge & Structures, Inc.</u>, 10 Va. App. 660, 662, 394 S.E.2d 867, 868 (1990) (citation omitted).

In finding that the evidence failed to establish an unjustified refusal of medical treatment, the commission found as follows:

> Dr. Smith concluded on April 1, 1999, that considering "[Collins'] numerous complaints, it is felt at this point, an ulnar nerve release would offer very little relief to his overall pain pattern and generalized loss of function due to his ongoing pain."
>
> Dr. Nabil Ahmad, a physical medicine specialist, on the other hand, believed [Collins] should undergo the surgery, as shown by his September 9, 1999, referral to Dr. Smith "as far as surgical release." Dr. Smith, however, did not recommend surgery. There was also no indication that Dr. Moore believed surgery was advisable, as shown by his January 25, 2000, referral to a pain clinic in Johnson City for [Collins'] complaints. Thus we agree with the deputy commissioner that the evidence failed to

-

establish an unjustified refusal of medical treatment.

"[I]t is fundamental that a finding of fact made by the Commission is conclusive and binding upon this court on review. A question raised by conflicting medical opinion is a question of fact." Commonwealth v. Powell, 2 Va. App. 712, 714, 347 S.E.2d 532, 533 (1986) (citations omitted). The commission was free to accept the opinions of Drs. Smith and Moore, and to reject the opinion of Dr. Ahmad. Their opinions constitute credible evidence to support the commission's decision that the evidence failed to establish an unjustified refusal of medical treatment.

For these reasons, we find that the commission did not err in awarding temporary total disability benefits to Collins. Accordingly, we affirm the commission's decision.

Affirmed.

-